JOHN C. THOMPSON, d. b. a. THE THOMPSON OIL COMPANY, v. PETER PETERSON.[1]

November 16, 1951.

No. 35,416.

---

[1]Reported in 50 N. W. (2d) 53.

*Ryan, Ryan, Ryan & Ebert,* for appellant.

*Sullivan & Swenson, Doherty, Rumble, Butler & Mitchell,* and *Richard J. Leonard,* for respondent.

KNUTSON, JUSTICE.

Appeal from a judgment in favor of defendant entered pursuant to an order of the trial court granting defendant's motion for judgment notwithstanding the verdict of a jury in favor of plaintiff.

The facts are not seriously in dispute. Defendant is employed by the state highway department as a truck operator. On December 15, 1948, at about 11:15 a. m., he was driving a two-ton state highway truck on trunk highway No. 371 about nine miles north of Brainerd, in this state, engaged in sanding the highway. At that time it was sleeting and raining, and the sleet and rain froze as it reached the ground, resulting in the formation of glare ice on the highway, which was exceedingly slippery. The truck driven by defendant was equipped with a sanding device fastened on the left rear of the dump box which spread sand from a hopper into which it was shoveled by workmen standing in the dump box. The truck was driven on the right half of the highway, and the sanding device spread sand for a width of about eight feet, the truck being driven so that the sand would extend from the center of the highway out toward the edge.

About eight o'clock in the morning, defendant, with his truck and crew, started sanding, going north from Brainerd. They had emptied one or more truckloads and returned to Brainerd, where they picked up another load of sand and proceeded to the point where they had left off prior to the collision here involved. After proceeding about a mile from the place where they again began sanding, the highway curved sharply from an easterly direction to the north. The curve is steeply banked, so that a vehicle traveling north would be at the topside of the banked curve.

Defendant drove his truck in super-low gear about four or five miles per hour in conducting the sanding operations. As he approached the curve described above, going north, plaintiff's truck was approaching from the opposite direction on a mission of delivering fuel oil and other oil products. The driver of plaintiff's truck was traveling about 10 to 15 miles per hour. When about 200 feet from the curve, he observed defendant's truck, engaged in sanding operations, on defendant's right side of the road and about in the middle of the curve. Plaintiff's driver thereupon permitted his truck to slow down as much as the drag of the motor would allow without applying the brakes. Shortly before the two trucks approached each other, the rear end of defendant's truck started to slide down the banked curve into plaintiff's half of the highway. Plaintiff then applied his brakes, causing his wheels to lock and skid, but was unable to stop his truck. As a result, the two trucks collided, causing plaintiff's truck to run into the ditch on his right side of the highway, causing the damages here complained of.

Defendant had been working on this stretch of highway for seven or eight years prior to the accident. He had sanded this particular curve on many occasions previously without having his truck slide or skid.

The jury returned a verdict for plaintiff, and on motion of defendant the trial court granted judgment notwithstanding the verdict, the trial court being of the opinion, as stated in its memorandum, that the collision was the result of an unavoidable accident and that there was no showing of negligence on the part of defendant.

It is conceded that defendant is not bound by our highway traffic act by virtue of M. S. A. 169.03, which provides:

"The provisions of this chapter shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the roadway of a highway, but shall apply to such persons and vehicles when traveling to or from such work."

Plaintiff contends that, irrespective of this exception, defendant is chargeable with common-law negligence and that the evidence

justified submitting the question of defendant's negligence to a jury, relying upon our decision in Hockenhull v. Strom Const. Co. 212 Minn. 71, 2 N. W. (2d) 430. We shall assume, for the purpose of this decision, that the rule announced in that case is applicable.

It is quite obvious at the outset that after defendant's truck began to slide neither party could do anything to avoid the collision. The driver of plaintiff's truck concedes that when he first saw defendant's truck beginning to slide he was about 30 or 40 feet from the point of impact and that he applied his brakes, but could not stop. He contends that defendant should have anticipated that he would slide on the banked curve when he entered the curve and that he could have driven with two wheels on the shoulder, which was not so slippery, or reduced his speed, or otherwise taken such precautions as would have prevented the sliding, and that the question of whether he was negligent in that respect was for the jury. He argues that the sanding operations were necessary in order to prevent vehicles from skidding, and from that he reasons that defendant should have anticipated that his own vehicle might slide and should have taken such precautionary action as was necessary to prevent it.

In Cohen v. Hirsch, 230 Minn. 512, 42 N. W. (2d) 51, we held that mere evidence that a vehicle skidded, standing alone, is not evidence of negligence. We did hold that the evidence in that case was such as to justify submitting to the jury the question of whether or not defendant's negligence caused the skidding. The facts, however, are not at all similar to those in the case now before us. Our cases and others from foreign jurisdictions respecting the rule applicable to facts where skidding is shown are reviewed in the Cohen case. We need not reconsider them here.

The question now before us is simply this: Is the evidence here such as to warrant submitting to the jury the question of whether defendant's operation of his truck, prior to the sliding thereof, was negligent? Should he have anticipated, when he drove his truck into the curve at a speed of four or five miles per hour, loaded as it was with nearly a full load of sand, that it would slide into plain-

tiff's path on the highway? It is apparent, if defendant should have anticipated that his truck might slide, that plaintiff, having a full view of the truck in the curve, on the incline, when he was some 200 feet away, should likewise have anticipated that defendant's truck might slide into his path if he proceeded into the curve. It may be true that there is always a possibility that any vehicle operated on a highway covered with glare ice may skid or slide, particularly when going around a banked curve; but if such sliding, standing alone, is to furnish the basis for a recovery, we are in effect applying the rule of *res ipsa loquitur* to a class of cases where it has not heretofore been applicable. Here, defendant was operating his truck in super-low gear at a speed which cannot be said to have been negligent. In order to sand the highway, he had to be there.

Plaintiff contends that when defendant observed plaintiff's truck approaching he should have stopped or decreased his speed or turned to the right, and that, had he done so, his truck would not have slid into plaintiff's path. It is more than probable that the opposite would have been true; and, had he been going faster, centrifugal force acting upon the truck going around the curve might have offset its tendency to slide down the banked curve. But to require the driver of a truck, situated as was defendant, to compute with nicety the speed at which centrifugal force would offset the natural pull of gravity on his truck on a slippery curve without going so fast that centrifugal force would cause his truck to slide in the opposite direction would involve the imposition of a degree of care not common to the law of negligence.

In Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 447, 40 N. W. (2d) 73, 81, we said:

"* * * It is axiomatic that an act or omission is not negligent unless the actor has knowledge or notice that it involves danger to others. Duty to exercise care is dictated and measured by the exigencies of the occasion as they are or should be known to the actor; and if no harm should be anticipated as a consequence of the act there is no negligence. Rue v. Wendland, 226 Minn. 449, 33 N. W. (2d) 593; 4 Dunnell, Dig. & Supp. §§ 6970, 6972. As said in Chris-

tianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641:

"'* * * If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; * * *.'"

Under all the circumstances existing here, we believe that defendant had no reasonable ground to anticipate that his truck would slide as it did, and the court correctly held that the collision was the result of an unavoidable accident.

Affirmed.