WILLIAM RUE v. VERNON WENDLAND.
ESTHER RUE v. SAME.[1]

June 25, 1948.

Nos. 34,659, 34,660.

*A. R. English* and *P. M. Meehl,* for appellants.

*Meagher, Geer & Markham,* for respondent.

[1]Reported in 33 N. W. (2d) 593.

PETERSON, JUSTICE.

In two separate actions, one by plaintiff William Rue to recover for personal injuries and property damage sustained as a result of a collision between his automobile and defendant's, and another by plaintiff Esther Rue to recover for personal injuries sustained by her as a guest passenger in William's car as a result of the collision, the verdicts were for defendant, and in the action in which William Rue was plaintiff, defendant recovered on his counterclaim against William. Plaintiffs appeal.

The questions for decision are:

(1) Whether a motorist was negligent was a question of fact where he approached at night on a paved highway at a speed of 45 to 60 miles per hour an automobile with its headlights on bright facing him standing on the shoulder to his right practically parallel to the pavement, which he first saw, as he came over a knoll about 700 feet away, approaching him in its right lane and cutting across the pavement where it stopped, and after it stopped it appeared to him to continue to approach him in its right lane, with the consequence that he was misled thereby to attempt to pass it by turning right onto the shoulder and then to his left to get back again on the pavement, but too late to avoid a collision; and

(2) Whether under the circumstances stated in the preceding question the operator of the standing automobile was negligent in permitting it to stand on the shoulder with headlights on bright was a question of fact.

Because under the doctrine of Munkel v. C. M. St. P. & P. R. Co. 202 Minn. 264, 278 N. W. 41, and similar cases, William's negligence was not imputable to Esther, decision that William was negligent would not be decisive as to her, and also because, if defendant as the approaching motorist was negligent, he was not entitled to recover against William on his counterclaim, it is necessary to determine whether he was negligent.

It is practically undisputed that the accident occurred at about one o'clock in the morning of February 15, 1947; that William Rue

was operating his automobile east on a paved trunk highway having a 20-foot pavement with approximately 9-foot shoulders on either side; that his wife, Esther, and their friends Mr. and Mrs. Percy Skelton were his guest passengers; that after proceeding east to a point near the driveway to the Skelton farmyard William cut across the pavement and stopped on the north (his left) shoulder, or the part of the Skelton driveway which connected with the pavement, practically parallel to the pavement; that Mr. Skelton immediately started to get out; that while he was so engaged defendant, who had come from the east over a knoll about 700 feet distant, turned to his right onto the shoulder and then turned to his left to get back onto the pavement, but before he did so hit the front of William's car. It is also undisputed that there was, as both William and defendant observed, no other traffic, vehicular or pedestrian, on the highway anywhere within view.

The testimony is conflicting as to other facts. Plaintiffs' version was that William's car had come to a full stop before defendant's car came over the knoll; that William had his headlights on bright before and when he cut across the pavement; that he dimmed them when he stopped; and that defendant for no apparent reason turned onto the shoulder and collided with William's car.

Defendant's version was that, while the night was clear, it was difficult to see the center line of the pavement and the line between the shoulder and the pavement because there was frost on the pavement and the shoulder was covered with smooth snow and ice which was flush with the pavement; that when defendant first saw William's car as he (defendant) came over the knoll it was approaching him on its right side of the road; that after William's car stopped he was blinded by its headlights, which were on bright; that William's car appeared to him to be approaching him in its right lane; that his (defendant's) lane of travel was to the right of its headlights; that he turned right onto the shoulder when he was somewhere between 100 to 150 feet away from William's car; that he did not know at first whether he was on the shoulder or the pavement because the former was so hard and smooth that he could hardly

tell any difference between them; that after he had gone a short distance he discovered not only that William's car was standing, but also that it was on the shoulder to his (defendant's) right of the pavement; and that thereupon he not only put on his brakes, but also turned to his left to get back onto the pavement, but, being unable to turn sharply enough to do so without running the risk of losing control of his own car, he collided with William's car. A highway patrolman testified that marks on the shoulder showed that defendant turned onto the shoulder about 165 or 170 feet east of William's car and that defendant stated that he was going about 60 or 65 miles per hour at the time.

1. By providing that in a civil action a violation of the highway traffic regulation act (M. S. A. 169.01 to 169.97) shall be prima facie evidence of negligence (§ 169.96), the act adopted negligence as the basis for determining liability based on violations thereof. Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553. The question whether defendant was negligent is to be determined solely in the light of the duty he owed plaintiffs (Boyd v. City of Duluth, 126 Minn. 33, 147 N. W. 710) and without regard to whether William was negligent.

An essential element of negligence is the actor's knowledge, actual or imputed, of the facts out of which the alleged duty arises. Negligence involves the idea of fault, and, because that is true, an act or omission is not negligent unless the actor had knowledge or notice that it involves danger to another. Greenwald v. Northern States Power Co. 226 Minn. 216, 32 N. W. (2d) 320; Schroepfer v. City of Sleepy Eye, 215 Minn. 525, 10 N. W. (2d) 398; 4 Dunnell, Dig. & Supp. § 6972. Precautionary duty depends on reason to apprehend results. Hussey v. Boston & Maine R. 82 N. H. 236, 245, 133 A. 9, 15. Duty is dictated and measured by the exigencies of the occasion as they are or should be known to the actor. An act or omission from which no injury should be anticipated is not negligent. Greenwald v. Northern States Power Co. *supra;* The Nitroglycerine Case (Parrot v. Wells, Fargo & Co.) 82 U. S. (Wall.) 524, 21 L. ed. 206; 38 Am. Jur., Negligence, § 32. It follows, therefore,

that the circumstances of which the actor has knowledge or notice are determinative of whether he was negligent. If this were not true, as said in Stedman v. O'Neil, 82 Conn. 199, 206, 72 A. 923, 926, 22 L.R.A.(N.S.) 1229:

"* * * the rule [that negligence consists of failure to exercise the same degree of care as a person of ordinary prudence would exercise under similar circumstances] would be shorn of all its fairness. *Men cannot be expected to govern their actions by what to them lies in the realm of the unknown.* Their actions cannot be compared to that of others—to that of the ordinarily prudent man—in respect to the degree of prudence exhibited therein, except upon the common basis of a common knowledge as to the surrounding and attending circumstances, actual or constructive. In this way only can the circumstances be made similar, and the specific man be brought under the same circumstances and conditions as the typical ordinarily prudent one who supplies the standard of comparison." (Italics supplied.)

One's perception, memory, and experience bear upon the question of whether he had knowledge. As a practical proposition, defendant's knowledge here consisted of what he perceived at the moment and his correlation thereof with his memory and experience. While a person is required to exercise his senses not only for the protection of others, but also of himself, the rule of reasonable care requires only that perception shall be reasonable under the circumstances. Reasonable perception does not require a person to perceive what is not apparent. As said in Prosser, Torts, § 36, p. 235, "* * * the individual will not be held to knowledge of risks which are not apparent to him." A party deceived by appearances calculated to deceive an ordinarily prudent person may regulate his conduct by such appearances, even though they may be contrary to actual fact. Mangan v. Des Moines City Ry. Co. 200 Iowa 597, 203 N. W. 705, 41 A. L. R. 368; Restatement, Torts, § 289, *comment d;* 38 Am. Jur., Negligence, § 190; 45 C. J., Negligence, § 508. Deception of living creatures by appearance contrary to actuality is perhaps a universal phenomenon,

as witness how travelers are misled by mirages, and even wildfowl are deceived by lights, pavements, crude oil pools, and the like to fly to their own harm.

Automobile drivers are no exception. They too may be deceived by appearances calculated to deceive ordinarily prudent persons. Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580. The cited case contains a discussion of the medical and physiological effects of bright lights upon the human eye. Whether an automobile standing on or adjacent to the traveled part of a highway at night with its headlights on bright reasonably appeared to a motorist to be approaching him and whether he was misled thereby and in what manner are fact questions depending upon the facts and circumstances of the particular case. Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196; Edblad v. Brower, 178 Minn. 465, 227 N. W. 493; Smith v. Levison, 222 App. Div. 310, 226 N. Y. S. 311. See, Herring v. Holicer Gas Co. Inc. (La. App.) 22 So. (2d) 868. In the Edblad case, where, in determining whether one Twet was misled to collide with defendant's car, it appeared that defendant parked his car almost wholly on the shoulder or as we said (178 Minn. 466, 227 N. W. 493) "almost wholly off the pavement" on his left and Twet's right side thereof with his headlights on. Twet tried to pass on his right, which was on the shoulder, and collided with defendant's car. We there said (178 Minn. 469, 227 N. W. 494) :

"* * * It is to be remembered that this was in the nighttime when drivers of cars judge of the position in the road of other motor vehicles by the headlights thereof.

\* \* \* \* \*

"* * * Upon no testimony in the case at bar could the jury view Twet's negligent driving as *distinct* from the deceptive position which the act of appellant gave his car by stopping on the wrong side of the road with the headlights lit."

In the Smith case, the court said (222 App. Div. 313, 226 N. Y. S. 315) :

"* * * When one looks at the lights of an automobile on the road directly ahead of him, it is very difficult to tell whether or not that car is moving. That the defendant did not instantly realize the significance of the lights before him is no element of negligence on his part."

In this connection, the fact that the operator charged with negligence was confronted with the lights of another car immediately after coming over a knoll or hill has an important bearing upon whether he was negligent. Olson v. Neubauer, 211 Minn. 218, 300 N. W. 613; Bartley v. Fritz, 205 Minn. 192, 285 N. W. 484.

The operator of an automobile may make reasonable assumptions that other operators will obey statutory requirements and act upon those assumptions until it appears either that they are without factual basis or that to do so will involve unreasonable risk of harm. Moan v. Aasen, 225 Minn. 504, 31 N. W. (2d) 265. Thus, he may assume, until the contrary appears, that motorists will comply with such statutory requirements as driving on the right side of the road (§ 169.18, subd. 1); that an approaching car will pass on its right (his left) (§ 169.18, subd. 2); that an approaching car on the wrong side of the road will turn onto the right side in time to pass safely (Kapla v. Lehti, 225 Minn. 325, 30 N. W. [2d] 685); that an automobile will *stop* or park on the shoulder parallel to and on its right (his left) side of the road (§ 169.35); that an automobile *parked* on the shoulder will not only be on its right shoulder, but that, because such a car is required to dim its lights, it will not have its lights on bright (§ 169.53); and that any car within a distance of 1,000 feet will dim its headlights (§ 169.61).[2] Compliance with the statutory requirements mentioned may be indicative to other motorists, depending upon the circumstances, not only of the location of an automobile upon the highway, but also of whether it is standing or moving. A motorist is not negligent in colliding at night with an

[2]The importance from a safety point of view of complying with the provisions of the highway traffic regulation act, including those relating to the dimming of headlights, is shown graphically in an excellent booklet, "Minnesota Driver's Manual 1948," issued by the state commissioner of highways.

automobile standing either wholly or partly on the shoulder on his right side of a paved highway with its headlights on bright facing him, where the standing automobile reasonably appeared to him, contrary to the fact, to be approaching him in its right (his left) lane and he was misled thereby to collide with it in attempting to pass it on his right or to avoid it after commencing an attempt to do so. Padgett v. Brangan, 228 Ky. 440, 15 S. W. (2d) 277; Whitworth v. Riley, 132 Okl. 72, 269 P. 350, 59 A. L. R. 584; Bailey v. Walker (Tex. Civ. App.) 163 S. W. (2d) 864; Hatch v. Daniels, 96 Vt. 89, 117 A. 105; Delfosse v. New Franken Oil Co. 201 Wis. 401, 230 N. W. 31; Annotation, 70 A. L. R. 1025. See, Snyder v. Murray, 223 Mo. App. 671, 17 S. W. (2d) 639. These cases are based upon reasoning similar to ours in the Duff and Edblad cases, *supra.*

The evidence here presented fact questions for the jury, and not questions of law for the court, as to whether William's car standing on the shoulder to defendant's right with its headlights on bright facing him after it had approached him in its right lane with its headlights on bright, crossed the pavement and stopped on the shoulder reasonably appeared to defendant to be approaching him in its right lane until he claims he discovered otherwise, and whether thereby defendant was misled to attempt to pass William's car on his (defendant's) right with the consequence that he got on the shoulder and collided with it in attempting to avoid it by turning back onto the pavement again.

Geisen v. Luce, 185 Minn. 479, 242 N. W. 8, is not in point, because there the approaching motorist was not misled by bright lights of a standing car. Nor is Denson v. McDonald, 144 Minn. 252, 175 N. W. 108, which for present purposes has been sufficiently distinguished in the Edblad case, *supra.*

2. Whether William was negligent as to defendant also was a fact question for the jury. The question whether the operator of an automobile was negligent as to a motorist approaching him from the opposite direction is a fact question, where there is evidence showing that he stopped his automobile and permitted it to stand at night on his left side of a paved highway either wholly or partly on the

shoulder with its headlights on bright; that the standing automobile reasonably appeared to the approaching motorist to be approaching him in its right lane; and that thereby he was misled to attempt to pass it on his right and to collide with it in attempting to avoid it. Edblad v. Brower, 178 Minn. 465, 227 N. W. 493, *supra;* Waynick v. Walrond, 155 Va. 400, 154 S. E. 522, 70 A. L. R. 1014, and Annotation; Whitworth v. Riley, 132 Okl. 72, 269 P. 350, 59 A. L. R. 584, and other authorities *supra.*

Knutson v. Farmers Co-op. Creamery, 180 Minn. 116, 230 N. W. 270, cited by plaintiffs, is not in point, for the reason that it did not involve a situation where bright lights of a car parked on the wrong side of the road misled an approaching motorist. There, plaintiff ran into the back of defendant's truck standing unlighted after dusk on its right side of the highway. That case was not one of bright lights misleading, but rather absence of any lights doing so. Gast v. Dallmann, 240 Wis. 103, 2 N. W. (2d) 716; Beck v. Fond du Lac Highway Committee, 231 Wis. 593, 286 N. W. 64; Village of Wonewoc v. Taubert, 203 Wis. 73, 233 N. W. 755, 72 A. L. R. 224; and Schacht v. Quick, 178 Wis. 330, 190 N. W. 87, 25 A. L. R. 130, cited by plaintiffs, are not in point. The Beck case involved a situation where a county truck was parked on the shoulder on its right side of the road with taillights on and without headlights facing approaching motorists on that side of the road.. The other cases involved the question whether stopping an automobile on a highway to enable passengers to alight violated the statute prohibiting "parking" on the highway. The Wisconsin court in Delfosse v. New Franken Oil Co. 201 Wis. 401, 405, 230 N. W. 31, 32, distinguished the Schacht case as being inapplicable to a fact situation similar to the one here, and said:

"However, the evidence presents more than the simple situation of an automobile parked on the left-hand side of the highway. In addition there were the following peculiar circumstances: A dark night. A roadway which, in width, afforded abundant opportunity for parking a south-bound truck elsewhere than in the usual pathway of north-bound cars. A slight curve, around which a north-

bound car had to turn until it was within one hundred feet, and because of which, until then, its lights would be reflected to the east of the parked truck. A truck parked so as to face, and to cast its lights, slightly to its right, because of which, aggravated by the further deception caused by the vibration of the wind-shield of the approaching north-bound car, the driver thereof was misled into believing that the truck was in motion and passing along, or toward, its right side of the road. In view of that combination of circumstances, the issue of whether the truck driver was negligent presented a question for the jury."

What the court there said of the Schacht case applies to others also, except the Beck case, which we have distinguished on other grounds.

Our conclusion is that whether defendant was negligent as to both William and Esther and whether William was negligent as to defendant were fact questions for the jury. Hence, there should be an affirmance.

Affirmed.