**NORTH STAR MUTUAL INSURANCE COMPANY, Respondent,**

v.

**R.W., Defendant,**

**T.F., Appellant.**

No. C3–88–835.

Court of Appeals of Minnesota.

Nov. 8, 1988.

Review Denied Jan. 13, 1989.

Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Stewart R. Perry, Wayzata, for defendant.

Richard W. Johnson, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., CRIPPEN and SHORT, JJ.

## OPINION

FOLEY, Judge.

This appeal is from a summary judgment granted in favor of respondent North Star Insurance Company after it had brought a declaratory judgment action against appellant T.F. to determine whether T.F.'s homeowner's insurance policy provided coverage for the negligent transmission of herpes through voluntary consensual sexual intercourse. We reverse and remand for trial.

## FACTS

T.F. was insured under a homeowner's policy issued by North Star effective July 9, 1983 through July 9, 1984. In May of 1984, T.F. and R.W., both adults, voluntarily engaged in sexual intercourse at T.F.'s home. Later that month, R.W. was diagnosed as having genital herpes. R.W. claims that T.F. negligently transmitted herpes to her through their sexual intercourse. T.F. acknowledges that after R.W. asked him to submit to a medical exam, he learned that he has herpes. He affirmatively asserts, however, that he did not know that he had herpes at the time that the couple engaged in intercourse.

The complaint specifically alleges that the actions of T.F. were *negligent* and *not intentional.* T.F. tendered the defense to North Star which declined coverage and subsequently commenced a declaratory judgment action. The trial court granted summary judgment in favor of North Star dismissing the complaint.

## ISSUES

R.D. Blanchard, Shirley S. Okrent, Meagher, Geer, Markham, Anderson,

1. Is the negligent transmission of herpes through voluntary consensual sexu-

al intercourse an accidental occurrence under the homeowner's policy issued by North Star that requires North Star to defend the underlying action?

2. When an adult insured engages in voluntary consensual sexual intercourse with an adult partner that results in the transmission of a sexual disease, must intent to injure be inferred as a matter of law where there exists a material issue of fact as to whether the disease was negligently transmitted?

3. Is the duty to defend a claim of negligent transmission of a sexual disease under a homeowner's policy contrary to public policy?

## ANALYSIS

Summary judgment is appropriate in cases where there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On review of a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was granted. *Grondahl v. Bulluck*, 318 N.W. 2d 240, 242 (Minn.1982).[1]

1. The issue of whether an insurance company, under the terms of a homeowner's policy, has a duty to defend its insured in a claim of negligent transmission of herpes through voluntary consensual sexual intercourse is one of first impression in Minnesota.

■ It is well established however, that if any claim is made against an insured which could result in liability for covered damages, the insurer has a duty to defend. *United States Fidelity & Guaranty Co. v. Roser*, 585 F.2d 932 (8th Cir.1978). Additionally, the Minnesota Supreme Court has held:

If any part of the claim is *arguably* within the scope of coverage afforded by the policy, the insurer should defend and reserve its right to contest coverage based on facts developed at trial.

*Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822, 825–26 (Minn.1980) (emphasis added).

*Examination of North Star's Policy Provisions*

A. *Definition of Bodily Injury*

Bodily injury is defined as "bodily harm, sickness or *disease* to a person including required care, loss of services, and death resulting therefrom." (Emphasis added.) It was conceded at oral argument that herpes is a disease. The language in the policy is clear. Herpes is a disease, and is not specifically excluded from the policy.

B. *Liability Provision*

Under *Coverage L, Personal Liability*, the policy provides in part:

We pay, up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies.

We will defend any suit seeking damages, provided the suit resulted from bodily injury or property damage not excluded under this coverage.

(Emphasis omitted.)

Occurrence is defined in the policy as "an accident, including continuous or repeated exposure to substantially similar conditions." An "accident" is not defined in the policy but has been defined in Minnesota in the landmark case of *Hauenstein v. St. Paul–Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954), as follows:

Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause.

*Id.* at 358–59, 65 N.W.2d at 126.

Here, T.F. contends that he did not know that he had herpes, and therefore the

---

1. The unsworn statement of the victim (plaintiff in the underlying action) offered by the insurer North Star at the time of the hearing on the motion for summary judgment did not qualify as an affidavit for purposes of a Rule 56 motion and played no part in the consideration or decision in this case.

transmission of herpes to R.W. was an accident. Contrarily, North Star argues that the transmission of a sexual disease is *never* an accident, and the disease does not occur without *wrongful sexual conduct.* Our role on appeal is not to measure moral conduct but to determine if, under the facts stated, the duty to defend is required of North Star.

Only one other jurisdiction has considered this issue. In *State Farm Fire and Casualty Co. v. Irene S. (Anonymous),* 138 A.D.2d 589, 526 N.Y.S.2d 171 (1988), the plaintiff in the underlying action alleged that the defendant had intentionally assaulted and raped her with the intent of transmitting genital herpes. The defendant was covered by a homeowner's policy with language similar to that involved here. There, the New York court held that the defendant had set forth a meritorious defense in that if he proved that the damages sustained by the plaintiff were unintended, the injuries would be covered by the policy, and recognized that at the least, the insurer was obligated to defend in the underlying action, although a decision on the insurer's ultimate responsibility would have to await the trial itself. The court also recognized that

> it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damages were intentional.

*Id.* at 591, 526 N.Y.S.2d at 173 (citations omitted).

■ We agree with the reasoning of the New York court. Here, T.F. contends that he did not know that he had herpes on the date that the couple had sexual intercourse. The claim is based in negligence principles. Accordingly, we hold that this is a material issue of fact for a jury to decide. Until this fact question is answered, we hold that the claim is arguably within the scope of coverage, and therefore North Star must defend T.F. in the underlying action. We observe that the duty to defend is broader than the duty to pay, and the obligation to defend is not synonymous with coverage.

*Economy Fire & Casualty Co. v. Iverson,* 426 N.W.2d 195 (Minn.Ct.App.1988), *pet. for rev. granted* (Minn. July 28, 1988).

2. North Star next contends that as a matter of law, the intentional acts exclusion should apply. The specific provision provides in part:

1. *Exclusions that Apply to Both Personal Liability and Medical Payments to Others*—This policy does not apply to liability:

\* \* \* \* \* \*

h. caused intentionally by or at the direction of any *insured;*

(Emphasis in original.)

■ North Star argues that intent to injure is inferred as a matter of law when the insured engages in sexual misconduct even though the claim is based on negligence. To support this argument, North Star cites five Minnesota cases. None of these cases supports North Star's argument that we should infer intent to injure upon the facts here. North Star relies on the following cases.

*Fireman's Fund Insurance Co. v. Hill,* 314 N.W.2d 834 (Minn.1982). Hill and his wife were foster parents. Hill had been arrested for criminal sexual conduct with a foster child. He engaged in sexual conduct with another boy for 15 months. Hill asserted that he did not intend to harm the boy. The court found that the nature of his conduct was such that an intention to inflict injury could be inferred as a matter of law. Before the abused boy was placed with Hill, the welfare department had confronted Hill with allegations that he had sexually assaulted other foster children. Hill knew that the welfare department viewed his conduct as detrimental to the boy. A psychiatrist testified that if Hill had been confronted with and warned of his activities with other children before having contact with the boy, then he must have realized that his sexual play with him was not in the boy's best interest. The court held that there facts give rise to an inference of intent to inflict injury.

*Horace Mann Insurance Co. v. Independent School District No. 656,* 355 N.W.

2d 413 (Minn.1984). Phillips, a counselor/basketball coach for Independent School District No. 656, allegedly had sexual contact with R.L.E. a high school student who played on the girls basketball team. Phillips became aware of R.L.E.'s history of drug use and began counseling her. She alleged that he inflicted several sexual contacts upon her during counseling with him and while on the basketball team. After the first alleged contact, she began to exhibit emotional problems more severe than those previously experienced with her drug problems. Since 1979 she experienced severe psychological illness and has required hospitalization on numerous occasions for suicidal tendencies, depression and anorexia. Her medical expenses as of 1983 were approximately $90,000. The court inferred intent to injure from the nature of the acts, *nonconsensual sexual contact with a minor.*

*State Farm Fire & Casualty Co. v. Williams,* 355 N.W.2d 421 (Minn.1984). Williams suffered from cerebral palsy since birth and was dependent on a wheelchair. Keller was a professor of physics at St. Olaf and began visiting Williams at his apartment to help him learn computor programming. At these meetings, Keller occasionally engaged in oral sodomy and masturbation of Williams. Williams claimed that this conduct was offensive, that he never consented to it, and that he repeatedly urged Keller to stop it. Keller admitted the sexual contact but claims that Williams consented to it. The court noted that the fact the victim in this case was not a minor did not distinguish this case from the former sexual assaults on minors. Significant to this case is the analysis in *Williams* of both *Fireman's Fund* and *Horace Mann.* In *Williams,* the supreme court noted:

> Both of those cases involved sexual assaults on minors by persons in authority over them. Does the fact that Williams, the victim, was an adult distinguish this case? We think not. Neither the insured nor the insurer in entering into the insurance contract contemplated coverage against claims arising out of nonconsensual sexual assaults. On the other

hand, if the sexual contacts were consensual, as asserted by respondent Keller, there would be no assault and hence no claim for recovery. Moreover, Williams was physically incapacitated, and Keller, at least an apparent authority figure, took advantage of Williams' physical disability under the guise of counseling Williams. *In such circumstances, as in Hill and Horace Mann,* we will infer an intent to cause bodily injury as a matter of law, thereby precluding Keller's intentional acts from coverage under his homeowner's policy.

*Id.* at 424 (emphasis added). The court stated further:

> An examination of the complaint, the depositions, and the stipulated statement of facts clearly shows that the claim in the main action is based upon the *intentional act of nonconsensual assault.*

*Id.* at 425 (emphasis added).

Here, we look to the complaint in the underlying action and find that it is grounded in *negligence,* and provides in part:

### IV.

That on said date, Defendant was afflicted with the disease Herpes Simplex II, which condition was then and there known to Defendant.

### V.

That Defendant failed to inform Plaintiff of this condition, thereby rendering null and void any consent to the sexual act on the part of Plaintiff which may have been given.

### VI.

That on that occasion, Defendant negligently transmitted to Plaintiff the disease Herpes Simplex II.

\* \* \* \* \* \*

### VIII.

That the actions of Defendant, while negligent and not intentional, were so grossly and wantonly indifferent to the

rights of Plaintiff as to justify the imposition of punitive damages as provided in Minnesota Statutes, Section 549.20, in an amount of no less than $50,000.

Because we are concerned with the duty to defend, the allegations of the complaint are an important consideration. *See Republic Vanguard Insurance Co. v. Buehl*, 295 Minn. 327, 332, 204 N.W.2d 426, 429 (1973). It is clear that the complaint here was not based on the intentional act of a nonconsensual assault. It is based on the negligent transmission of herpes through voluntary, consensual sexual intercourse between adults.

*Estate of Lehmann v. Metzger*, 355 N.W.2d 425 (Minn.1984). The Lehmanns brought an action against the uncle of their minor daughter, alleging that he had repeatedly sexually assaulted the girl when she was between the ages of 12 and 16 years old. The court held that in examining the "intentional act" exclusion of insurance policies where the underlying claim is that the insured intentionally sexually assaulted the victim, an intention to inflict injury will be inferred as a matter of law.

*Illinois Farmers Insurance Co. v. Judith G.*, 379 N.W.2d 638 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. March 21, 1986). Donald G., the son of Judith G. was the neighborhood babysitter. Two fathers informed police that they suspected sexual abuse of their daughters by Donald G. The girls, who were both under the age of 10 at the time of the sexual abuse, said that the sexual acts were accompanied by threats of injury if they reported him or refused to submit. We held that neither the insured nor the insurer in entering into the insurance contract contemplated coverage against claims arising out of *nonconsensual sexual assaults.*

Here, North Star is asking us to infer intent as a matter of law in a negligence case involving consenting adults. We decline to do so because there is a remaining material issue of fact to be resolved.

■ 3. North Star argues that it is against public policy to allow coverage here. North Star asserts in support of its position that Minnesota has not recognized a cause of action in tort for the transmission of sexual disease through sexual intercourse. We have, however, recently recognized a cause of action for the fraudulent and negligent transmission of sexual diseases, and in making that decision, we have outlined several important public policy considerations in support of that decision. *See R.A.P. v. B.J.P.*, 428 N.W.2d 103, 106 (Minn.Ct.App.1988) ("Minnesota courts have long recognized that the preservation of public health is a matter of great public importance. Legal duties and rules must therefore be designed, whenever possible, to help prevent the spread of dangerous, communicable diseases.")

Next, North Star argues that financial responsibility for sexual misconduct should not be spread among insureds through insurance. We find no merit in this argument. An insurance company can adjust and rewrite its policies to create more specific terms and exclusions. North Star could specifically exclude coverage to policy holders for the transmission of sexual diseases.

Accordingly, we hold that North Star's duty to defend T.F. pursuant to the terms of his homeowner's policy is not contrary to public policy.

## DECISION

The decision of the trial court is reversed and remanded for trial of the underlying action. Viewed in the light most favorable to T.F., we hold that North Star's duty to defend T.F. in that action is arguably within the scope of coverage afforded by North Star's policy. The duty to indemnify, however, shall be deferred until a trial on the merits in the underlying action.

**REVERSED AND REMANDED.**