467 N.W.2d 645 (1991)
M.M.D., Respondent,
v.
B.L.G., Appellant.
No. CX-90-2114.
Court of Appeals of Minnesota.
April 2, 1991.
Review Denied May 23, 1991.
*646 James Patrick Leavitt, III, J. Patrick Leavitt, Jr. P.A., Shakopee, for respondent.
Robert T. Stich, Stich, Angell, Kreidler & Muth, P.A., Minneapolis, for appellant.
Considered and decided by KALITOWSKI, P.J., and SHORT and POPOVICH,[*] JJ.

OPINION
SHORT, Judge.
M.M.D. brought this action against her former boyfriend, B.L.G., alleging he negligently and intentionally infected her with genital herpes. After a court trial, the trial judge found in M.M.D.'s favor. On appeal, B.L.G. argues M.M.D. failed to carry her burden of proof. We disagree and affirm.

FACTS
B.L.G. and M.M.D. met in October, 1985. They began a sexual relationship in January of 1986. Neither had been diagnosed with genital herpes before that time. In addition, M.M.D. had never experienced any symptoms of the disease before beginning her sexual relationship with B.L.G. However, B.L.G. had a history of genital sores and had indicated a concern about herpes to his physician as early as August, 1984. In November of 1985, B.L.G. sought medical attention for a recurring episode of sores on his penis. B.L.G.'s physician noted in his medical record B.L.G. should return to the office for a herpes culture if an "active ulcer" recurred.
On March 16, 1986, M.M.D. experienced severe blisters on her genitals. M.M.D.'s physician took a herpes culture, which confirmed a diagnosis of genital herpes. When M.M.D. telephoned B.L.G. to inform him of the diagnosis, B.L.G. told her he was sorry and he "thought he had something like that" the previous fall, but was not sure. Also, in mid-March, B.L.G. developed blisters on his genitals. The blisters recurred in April, and a herpes culture isolated the herpes simplex II virus.
M.M.D. brought this action against B.L.G. for negligent transmission of genital herpes. B.L.G. counterclaimed, alleging M.M.D. negligently infected him. The case was tried to the court. B.L.G. presented no evidence in support of his counterclaim. The trial court found in favor of M.M.D. and ordered B.L.G. to pay her $38,300.00 in damages.

ISSUE
I. In the absence of medical confirmation of herpes, is there a legal duty to warn sexual partners about the existence of genital sores?
II. Despite a lack of medical certainty, does the evidence sustain the trial court's finding that B.L.G.'s acts caused M.M.D.'s infection?
III. Does the evidence sustain the trial court's award of damages?

ANALYSIS
Minnesota recognizes a cause of action for negligent transmission of genital herpes. See R.A.P. v. B.J.P., 428 N.W.2d 103, 106 (Minn.App.1988), pet. for rev. denied (Minn. Oct. 19, 1988). As in any negligence action, four essential elements must be established by the plaintiff: (a) the existence of a legal duty, (b) a breach of that duty, (c) injury to plaintiff proximately caused by the breach, and (d) damages to the plaintiff. Here, B.L.G. agrees he did not warn M.M.D. of his genital sores. However, B.L.G. argues (1) he had no legal duty to warn M.M.D., (2) M.M.D. failed to prove his acts of sexual intercourse caused her to become infected with the herpes virus, and (3) the damage award is without factual basis. We disagree and affirm.

*647 I.
B.L.G. argues he owed no legal duty to warn M.M.D. about his "body acne" condition because he "did not know" and "had no reason to know" he had herpes. We disagree. Whether a legal duty exists is generally a question of law for the court to resolve. Larson v. Larson, 373 N.W.2d 287, 289 (Minn.1985). In R.A.P., we concluded as a matter of law persons who know they have herpes "have a duty to use reasonable care to avoid infecting others." R.A.P., 428 N.W.2d at 107. However, a legal duty to use reasonable care to avoid infecting others with herpes may arise even where a person does not have medical confirmation that the disease has been contracted.
Knowledge of facts giving rise to a duty may be imputed. See C.A.U. v. R.L., 438 N.W.2d 441, 443 (Minn.App.1989) (citing Rue v. Wendland, 226 Minn. 449, 452-53, 33 N.W.2d 593, 595-96 (1948)). Perception and experience bear on whether a person will be charged with knowledge. Id. A key factor courts consider in determining if a legal duty exists is whether the potential injury was a reasonably foreseeable consequence of the defendant's actions. See id. (quoting Balder v. Haley, 399 N.W.2d 77, 81 (Minn.1987)); R.A.P., 428 N.W.2d at 107.
The transmission of the herpes virus was a reasonably foreseeable consequence of B.L.G.'s acts of sexual intercourse with M.M.D. A reasonable person with recurring sores on the genitals, who also has been told by a physician that a herpes culture may be advisable, should know there is a reasonable possibility that herpes has been contracted. In addition, a reasonable person should know an acne-type condition on the genitals could be communicated to others through sexual contact. Under these circumstances, the person has a duty to avoid sexual contact, or at least to inform potential sex partners about the genital sores and the physician's advice. The trial court correctly concluded B.L.G. had a legal duty to warn M.M.D.

II.
B.L.G. argues the evidence does not sustain the trial court's finding on causation because M.M.D.'s medical expert was unable to determine that M.M.D.'s March 1986 herpes outbreak was due to a recent infection and not due to a dormant virus. We disagree.
It is well-settled that positive testimony by a medical expert is not necessary in every personal injury action to establish a causal connection between the defendant's negligent act and the plaintiff's injury. See Stahlberg v. Moe, 283 Minn. 78, 85, 166 N.W.2d 340, 345 (1969); W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 41, at 269 (5th ed. 1984) (hereinafter Prosser). Expert testimony is required to establish causation only where the "question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding." Bernloehr v. Central Livestock Order Buying Co., 296 Minn. 222, 225, 208 N.W.2d 753, 755 (1973); see also, Prosser, supra, § 41, at 269.
As causation of herpes is not beyond the average person's knowledge, expert testimony was not necessary to establish causation in this case. M.M.D.'s medical expert's inability to determine the recency of the infection to a reasonable degree of medical certainty does not deprive the fact finder of its ability to determine causation in this case.
B.L.G. also argues the evidence is insufficient to sustain the trial court's finding that his acts of sexual intercourse with M.M.D. were the cause-in-fact of M.M.D.'s infection with the herpes virus. However, M.M.D. established the causal link by a preponderance of the evidence. See Prosser, supra, §§ 38, 41 (causation must be proved by a preponderance of evidence). Undisputed evidence shows B.L.G. sought medical attention in November of 1985 for recurring ulcerative genital sores. At that time, B.L.G.'s physician told him a herpes culture was advisable if sores recurred. It *648 is also undisputed M.M.D. had never been diagnosed with or experienced symptoms of herpes before the parties began a sexual relationship. Uncontroverted evidence shows both parties had outbreaks of genital herpes ulcerations in mid-March, 1986. M.M.D. was diagnosed with genital herpes on March 16, 1986. M.M.D.'s medical expert testified that symptoms from a recent infection with the herpes virus tend to be much more severe than symptoms from a recurrence, and that painful urination is a "classic symptom" of a recent infection. Both M.M.D. and her expert, who was M.M.D.'s treating physician, testified that M.M.D.'s initial symptoms were severe and that urination was so painful as to require catheterization. M.M.D. testified that when she informed B.L.G. of her diagnosis, he did not seem surprised and told her he was sorry. The evidence also shows that after M.M.D.'s diagnosis, B.L.G. told both M.M.D. and her sister he thought he had something like herpes in the fall of 1985. Finally, undisputed evidence shows that on April 14, 1986, B.L.G. was definitely diagnosed with genital herpes. This evidence, taken as a whole, is sufficient to sustain the trial court's finding that B.L.G.'s acts of sexual intercourse with M.M.D. caused M.M.D. to become infected with the herpes virus.

III.
The trial court found M.M.D. suffered the following damages:

 Medical expenses:
 past $ 50.00
 future 250.00
 Pain and suffering
 past 4,000.00
 future 15,000.00
 Mental suffering
 past 4,000.00
 future 15,000.00
 __________
 TOTAL $38,300.00

B.L.G. argues the evidence does not support these findings. We disagree.
The evidence demonstrates M.M.D. has suffered recurrences of herpes symptoms approximately six times per year since March of 1986, with each recurrence lasting about two weeks. M.M.D.'s medical expert testified herpes is permanent and infected persons may have as many as 8 to 12 outbreaks per year, although the frequency of outbreaks tends to decrease with age. The evidence also shows M.M.D.'s life expectancy is approximately 53 years. M.M.D. testified she uses a gel, which costs about $10.00 per year, to alleviate the symptoms during outbreaks. This testimony, along with the evidence that herpes is permanent, is sufficient to sustain the court's finding concerning past and future medical expenses.
The record contains considerable evidence of M.M.D.'s physical pain and suffering. M.M.D.'s initial herpes outbreak was so painful and severe she had to be catheterized to urinate. Subsequent outbreaks caused M.M.D. constant physical pain, itching, and sensitivity. Further, M.M.D.'s physical activities are severely limited during outbreaks. This evidence, along with the evidence that herpes is permanent, is sufficient to sustain the court's finding concerning damages for past and future pain and suffering.
In addition, M.M.D. testified she feels outrage and sadness about having herpes. She testified about self-consciousness and a fear that others will find out she has the disease. She expressed feelings of dirtiness, isolation, and humiliation. Further, the disease even has led to emotional detachment from her children. This evidence is sufficient to sustain the court's finding concerning damages for past and future mental suffering.

DECISION
B.L.G. had a reasonable basis to know he had herpes because he had recurring genital sores coupled with a medical evaluation that the sores may have been herpes. Despite a lack of medical certainty regarding causation, the preponderance of the evidence sustains the trial court's decision.
Affirmed.
NOTES
[*] Retired chief justice, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10, and Minn.Stat. § 2.724, subd. 3 (1990).