**MILBANK INSURANCE COMPANY,**
Appellant,

v.

**B.L.G., Respondent,**

and

**M.M.D., Respondent.**

No. C8-91-2431.

Court of Appeals of Minnesota.

April 14, 1992.

Review Denied July 16, 1992.

sealing the record, privacy interests would be even better protected.

Jerome R. Klukas, Richard S. Scherer, Castor, Klukas, Scherer & Logren, Minneapolis, for Milbank Ins. Co.

William G. Peterson, Peterson & Associates, Ltd., Bloomington, for B.L.G.

J. Patrick Leavitt, Jr., James P. Leavitt, III, Shakopee, for M.M.D.

Considered and decided by HARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

HARTEN, Judge.

In this declaratory judgment action, appellant Milbank Insurance Company appeals from summary judgment declaring that damages for which respondent B.L.G. is legally liable are covered by a homeowner's policy issued by Milbank. B.L.G. was found liable for respondent M.M.D.'s damages in a prior underlying lawsuit. There, the trial court concluded that B.L.G. breached a duty to use reasonable care to avoid transmitting genital herpes to M.M.D. The parties argue that the outcome of M.M.D.'s lawsuit is dispositive on the issue of insurance coverage. Because we find that there are genuine issues of material fact precluding summary judgment, we affirm in part, reverse in part and remand.

## FACTS

In the underlying action commenced in August 1988, M.M.D. sued B.L.G. for injuries related to the transmission of genital herpes. In August 1990, after a trial to the court, the trial court made the following findings of fact:

1. On November 25, 1985, [B.L.G.] was seen by his doctor. As noted in * * * [B.L.G.'s] medical records, [B.L.G.'s] primary concern * * * was "recurring * * * [genital] sores on 2 different areas * * * occurring each one [or] two occasions over the last year. First noted 1 year ago and seen by another physician in Jordan [who] gave him some antibiotics."

The report noted that there were no active ulcers at that time. [B.L.G.] was advised to return to the office for a herpes culture if an active ulcer should recur. (Later notes reveal that if the ulcers are not active the herpes culture would reveal nothing.)

2. Approximately one month later the parties met. In early January, 1986, they began a sexual relationship that lasted until August, 1987.

3. Prior to starting the sexual relationship [B.L.G.] did not tell [M.M.D.] of

his concern that he might have a sexually transmittable disease.

4. On March 14, 1986, [M.M.D.] was examined by her family doctor. No symptoms of herpes were present.

5. On March 16, 1986, [M.M.D.] noticed blisters in her genital area and returned to her doctor. The blisters were so severe that [M.M.D.] was unable to urinate and she had to be [catheterized]. The blisters were observed and a herpes culture was positive for the herpes virus.

6. [M.M.D.'s] doctor testified that herpes is a viral disease and will recur throughout [M.M.D.'s] life and that there is no known cure. Prior to the March 16, 1986 examination [M.M.D.] never was diagnosed as having herpes. The doctor further testified that there are two types of herpes outbreaks. The first type is due to a recent exposure * * * and produces [severe] lesions * * * and problems with urination. The second type of outbreak is due to a reoccurrence. The lesions are less severe * * *. In [M.M.D.'s] case the doctor could not say for sure which type of occurrence it was without further tests which were not done.

7. [M.M.D.] had a telephone conversation with [B.L.G.] on the day she was diagnosed as having herpes. In the conversation [M.M.D.] informed [B.L.G.] of the outcome of the test. She was very emotional and outraged. [B.L.G.] said he was sorry and that he thought he had had something that past fall.

8. Despite her "outrage" [M.M.D.] began to live with [B.L.G.] and continued their sexual relationship until August, 1987. During the time they lived together they talked about the condition quite a lot. On one occasion [M.M.D.] was crying in bed and asked if she had done this. [B.L.G.] replied "No, I know you didn't."

9. [M.M.D.'s] sister Kim, spoke with [B.L.G.] about the condition. Kim was a friend of [B.L.G.] before her sister met him and she continues to consider herself a friend. In one conversation [B.L.G.] related to her that he felt bad about the whole thing. [B.L.G.] never said that he had herpes. [B.L.G.] stated that he did feel that he had something a long time before he met [M.M.D.], but he didn't know what it was.

10. Because of herpes [M.M.D.] has experienced physical and mental pain. * * *.

11. The disease has also caused [M.M.D.] emotional problems. * * *.

\*      \*      \*      \*      \*      \*

13. That [B.L.G.] knew or should have known that he was infected with the herpes virus.

14. That [B.L.G.] was aware of the infection before he had sexual relations with [M.M.D.].

15. That [B.L.G.] did not inform [M.M.D.] prior to engaging in sexual contact with her that he had herpes or that he thought he might have herpes.

16. That because of the sexual contact, [B.L.G.] caused [M.M.D.] to become infected with the herpes virus.

\*      \*      \*      \*      \*      \*

18. That [M.M.D.] has suffered [$38,-300] in damages as a result of [B.L.G.'s] conduct * * *.

The trial court also made the following conclusions of law:

1. That [B.L.G.] owed a duty of reasonable care to avoid transmitting herpes to [M.M.D.].

2. That [B.L.G.] breached this duty and was negligent by failing to warn [M.M.D.] that he had reason to believe he was infected with the herpes virus prior to sexual contact.

3. That because of [B.L.G.'s] failure to warn [M.M.D.] of his herpes infection [M.M.D.] had sexual relations with him and was infected with herpes.

4. That [M.M.D.] has suffered damages as a result of the infection.

In its memorandum, the trial court said:

The Court is convinced that [B.L.G.] knew that his problem was or probably was herpes. This is shown by his prior medical history, his reaction to [M.M.D.] informing him that she had herpes, and his later statements to [M.M.D.] and his sister.

The trial court ordered judgment against B.L.G. for M.M.D.'s damages.

In June 1991, Milbank brought this declaratory judgment action to determine if coverage under its homeowner's policy applies to B.L.G.'s liability to M.M.D. The parties made cross-motions for summary judgment to the same trial court judge who decided the court trial of the underlying lawsuit. On December 3, 1991, the trial court granted B.L.G.'s motion for summary judgment and denied Milbank's motion for summary judgment. The trial court held that B.L.G.'s liability for M.M.D.'s damages was covered by the insurance policy. Milbank appeals.

### ISSUES

1. Was Milbank entitled to summary judgment as a matter of law?

2. Was B.L.G. entitled to summary judgment as a matter of law?

3. Is Milbank obligated to pay B.L.G.'s attorney fees at the trial court and on appeal?

4. Should Milbank's reply brief be stricken and sanctions imposed because the reply brief raises entirely new issues?

### ANALYSIS

### INTRODUCTION

Milbank disclaims coverage based on two policy provisions. "Coverage E," provides coverage for certain personal liability. It reads:

> If * * * a suit is brought against an insured for damages because of bodily injury * * * caused by an occurrence to which this coverage applies, we will:
>
> 1.  pay up to our limit of liability for the damages for which the insured is legally liable.

The policy defines "occurrence" as an "accident" that results in bodily injury. "Accident" is not defined in the policy.

· Milbank also relies on an exclusionary clause. It provides that "Coverage E" does not "apply to bodily injury" that is "expected or intended by the insured."

■ The instant summary judgment motions were based solely on the insurance policy; the findings of fact, conclusions of law and judgment in the underlying lawsuit; and this court's published opinion affirming the trial court's decision in that action. See *M.M.D. v. B.L.G.*, 467 N.W.2d 645 (Minn.App.1991), *pet. for rev. denied* (Minn. May 23, 1991). The parties apparently interpret appellate decisions to provide that, after an underlying action has been tried, the duty to indemnify can only be based on factual *findings. See, e.g., Brown v. State Auto and Casualty Underwriters*, 293 N.W.2d 822, 825–26 (Minn. 1980) (if claim is arguably within coverage "insurer should provide the defense while reserving its right to contest coverage based on the facts developed at trial"). If, however, the findings of fact and conclusions of law are insufficient to determine the duty to indemnify, the trial court should review the testimony adduced in the underlying action.

We note that the trial court apparently recognized that it needed to make additional factual findings in order to decide the present cross-motions for summary judgment. Furthermore, those findings are not entirely consistent with the findings in the underlying action.

Summary judgment proceedings deal with whether there are genuine issues of material fact; the role of the summary judgment court is not to find facts. The trial court judge who decided these summary judgment motions also tried the underlying action. We cannot review his memory of the testimony, however.

The trial court found:

> The nature and character of B.L.G.'s act in causing M.M.D. injury is not of such a calculated nature that intent to inflict an injury can be inferred. B.L.G. and M.M.D. had an ongoing personal relationship of the most intimate character. B.L.G.'s conduct did not possess the type of planning necessary to infer intent. Nor is the *action* that resulted in the harm the type that is inherently offensive.

   \*    \*    \*    \*    \*    \*

In the prior action this Court found that B.L.G. knew he had or should have known he had herpes and acted negligently when he infected M.M.D. He suspected he had a venereal disease and had gone to a doctor. The doctor evidently could not make a diagnosis because the disease was not active and he was advised to return to the doctor when the disease was active. B.L.G. did not return. He also failed to warn M.M.D. of his knowledge or suspicions. There is no question B.L.G. intended to have sexual relations with M.M.D. But it is also true that B.L.G. did not intend to transmit herpes to M.M.D. or cause her any harm by his actions. * * * M.M.D.'s infection was an unexpected and unforeseen consequence, i.e., an accident.

The reviewing court on appeal from a summary judgment looks at "whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). Factual inferences and doubts are to be resolved against the moving party. *Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981). On appeal, this court looks at the evidence in a light most favorable to the party against whom summary judgment was entered. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982). We review questions of law de novo. *Hubred*, 442 N.W.2d at 310.

1. We turn first to the exclusionary clause upon which Milbank relies. Milbank argues that, because knowledge of disease was imputed to B.L.G. in the underlying lawsuit, it now can be said as a matter of law B.L.G. "knew" he had herpes and thus "expected" and "intended" to infect M.M.D. We disagree.

The duty to use reasonable care to avoid injuring others is an affirmative duty requiring a person "to exercise his senses * * * for the protection of others." *Rue v. Wendland*, 226 Minn. 449, 453, 33 N.W.2d 593, 596 (1948). The courts of Minnesota have long recognized:

that the preservation of public health is a matter of great public importance. Le-

gal duties and rules must therefore be designed, whenever possible, to help prevent the spread of dangerous, communicable diseases.

*R.A.P. v. B.J.P.*, 428 N.W.2d 103, 106 (Minn.App.1988), *pet. for rev. denied* (Minn. Oct. 19, 1988). A person who knows he has herpes has " 'a duty to use reasonable care to avoid infecting others.' " *M.M.D.*, 467 N.W.2d at 647 (quoting *R.A.P.*, 428 N.W.2d at 107).

In the underlying lawsuit, B.L.G. was found to have a legal duty to use reasonable care to avoid infecting others with herpes. *M.M.D.*, 467 N.W.2d at 647. This court held that "a legal duty to use reasonable care to avoid infecting others" may exist as a matter of law even without "medical confirmation" that the person has the disease. *Id.* It noted that a key factor in the existence of a legal duty is "whether the potential injury was a reasonably foreseeable consequence." *Id.*

This court found that B.L.G. had a duty to avoid infecting others because a reasonable person in B.L.G.'s position "should know there is a reasonable possibility" he is infected and could infect others with whom he has sexual contact. *Id.* Therefore, this court concluded that, "The transmission of the herpes virus was a reasonably foreseeable consequence of B.L.G.'s acts of sexual intercourse with M.M.D." *Id.*

It is settled law in Minnesota that "foreseeable" does not mean "expected." *Continental W. Ins. Co. v. Toal*, 309 Minn. 169, 176, 244 N.W.2d 121, 125 (1976).

Defining "expected injury" as a foreseeable injury would have the effect of unduly limiting coverage under a liability policy since foreseeability is generally an essential element in establishing liability.

*Id.* If there were no foreseeability, there would be no liability to indemnify and if there were liability, there never would be insurance coverage for negligence. *Id.* Minnesota law requires a high degree of certainty in order to find that an injury is expected. *See Auto–Owners Ins. Co. v. Jensen*, 667 F.2d 714, 720 (8th Cir.1981)

(citing *Toal,* 309 Minn. at 176 n. 3, 244 N.W.2d at 125 n. 3.)

We disagree with Milbank that the holding B.L.G. "should have known" he had herpes and could infect M.M.D. compels a finding B.L.G. had a high degree of certainty he would infect M.M.D. It does not necessarily follow that an actor did actually know what a reasonable person in the actor's position would conclude. Furthermore, a reasonable possibility that an actor is contagious does not compel the conclusion that it is highly certain a particular act of his will result in the infection of another.

Minnesota law is also settled on the issue of "intent." Coverage is not avoided by an intentional act exclusion

> unless the insured has acted with intent to cause a bodily injury. When the act itself is intended but the resulting injury is not, the insurance exclusion has no application.

*Caspersen v. Webber,* 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973), *quoted in Toal,* 309 Minn. at 174, 244 N.W.2d at 124. Intent will not be presumed. *Toal,* 309 Minn. at 175, 244 N.W.2d at 125. Intent may be established, however, if it is proven there was an intent to injure, even if the intended injury was less severe or of a different kind than the actual injury. *Woida v. North Star Mut. Ins. Co.,* 306 N.W.2d 570, 573 (Minn.1981). Intent may also be established if "the character of an act is such that an intention to inflict injury can be inferred as a matter of law." *Id.*

Milbank does not contend B.L.G. intended to injure M.M.D.; rather, Milbank asks that intent be inferred. We decline to address inferred intent, however, without a finding that B.L.G. engaged in sexual contact with M.M.D. knowing it was highly certain that he would infect her.

We now turn to Milbank's argument that B.L.G.'s transmission of herpes to M.M.D.

was not an "occurrence" under the policy, because it was not an "accident." In Minnesota, "accident" has been defined as "an unexpected, unforeseen, or undesigned happening." *North Star Mut. Ins. Co. v. R.W.,* 431 N.W.2d 138, 140 (Minn.App. 1988), *pet. for rev. denied* (Minn. Jan. 13, 1989) (quoting the definition of accidental damage to property in *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 358–59, 65 N.W.2d 122, 126 (1954)). Milbank contends the *Hauenstein* definition means that, if an injury is "foreseeable," it cannot be an "accident."

The application of the *Hauenstein* definition to particular facts "has produced a quagmire of conflicting results and rationales." *Bituminous Casualty Corp. v. Bartlett,* 307 Minn. 72, 77, n. 5, 240 N.W.2d 310, 313 n. 5 (1976), *overruled on other grounds, Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 391 (Minn.1979). In light of the supreme court's subsequent decision in *Toal,* we hold that, at least in the context of facts such as these, the *Hauenstein* definition of "accident" does not exclude all "foreseeable" injury.[1] It makes little sense to give a narrower reading to "occurrence" than we do to an exclusion from coverage for the "occurrence."[2] Therefore, we adopt the view that "the term ['accident'] includes all negligently caused injury, provided such injury was not intentional." *Bartlett,* 307 Minn. at 77 n. 5, 240 N.W.2d at 313 n. 5 (citing Annotation, *Liability Insurance: "Accident" or "Accidental" as Including Loss Resulting from Ordinary Negligence of Insured or his Agent,* 7 A.L.R.3d 1262 (1966)).

Finally, we are unpersuaded by Milbank's public policy arguments. Insurance coverage for liability for transmission of herpes is not contrary to public policy. *R.W.,* 431 N.W.2d at 143.

---

**1.** *See Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co. of Am.,* 323 N.W.2d 58, 64 (Minn.1982) (distinguishing between injury to people caused by faulty work and breach of contract for faulty work.)

**2.** We find no conflict with the holding of *R.W.,* 431 N.W.2d at 140–41 that the transmission of herpes was an "accident" if the insured did not know he had herpes. *R.W.* did not address whether a "foreseeable" transmission of herpes could be an accident.

We hold that the trial court did not err in denying Milbank's motion for summary judgment.

2. We cannot agree with B.L.G. and M.M.D., however, that it was proper for the trial court to grant summary judgment to B.L.G.

As noted above, the underlying action was decided on the basis of imputed knowledge. The trial court never found that B.L.G. did *not* know he had herpes; the trial court did not have to decide B.L.G.'s actual knowledge. Nor did the trial court determine whether B.L.G. knew it was highly certain he would infect M.M.D. Therefore, Milbank is not collaterally estopped from litigating whether B.L.G. "expected" or "intended" to infect M.M.D. *Cf. Brown*, 293 N.W.2d at 825 (resolution of issue in prior action has to be "necessary and essential").

Furthermore, we do not agree with B.L.G. that his negligence was in failing to know what he should have known. His negligence was failing in the duty to use reasonable care to avoid spreading disease. *M.M.D.*, 467 N.W.2d at 647. That legal duty was imposed based on foreseeability through imputed knowledge. *Id.*

When viewing the prior findings of fact, conclusions of law and judgment in the underlying lawsuit in the light most favorable to the non-moving party (here, Milbank), we find summary judgment was not proper for B.L.G. An inference can be drawn that B.L.G. did know he had herpes and could infect others. We hold that a factfinder must determine the extent and certainty of B.L.G.'s knowledge and whether he expected that he would infect M.M.D. with herpes through sexual contact.

3. Because we find there are genuine issues of material fact as to Milbank's duty to indemnify, we do not address Milbank's obligation to pay B.L.G.'s attorney fees in this declaratory judgment action.

4. Because we are remanding this case, we deny as moot M.M.D.'s motion to strike Milbank's reply brief on the ground it raises an issue not presented in the parties' briefs. *See* Minn.R.Civ.App.P. 128.02, subd. 3.

## DECISION

Affirmed in part, reversed in part and remanded.

CRIPPEN, Judge (concurring in part and dissenting in part).

On the record before us, respondent B.L.G. is entitled to a declaration of coverage as a matter of law. We should affirm the trial court's summary judgment for respondent.

Responding to B.L.G.'s motion for summary judgment, appellant Milbank Insurance Company relied exclusively on the determinations of fact in M.M.D.'s suit against B.L.G. Milbank stipulated that the trial court could decide the case by summary judgment premised on its adjudication of facts in the prior proceedings. Milbank has presented neither the trial court nor this court with an offer of any evidence other than the prior adjudication.

In the initial negligence proceedings, the trial court found that transmission of herpes was foreseeable because B.L.G. knew or should have known that he was infected with the virus. As we conclude unanimously, nothing in this adjudication suggests occurrence of intentional harm. Because Milbank offers nothing more, confining itself to this adjudication, the trial court's summary judgment for respondent B.L.G. should not be disturbed.

Except on reversal of summary judgment for B.L.G., I concur in the entirety of the majority opinion. On the summary judgment for B.L.G., I respectfully dissent.