## DEAN BERNLOEHR v. CENTRAL LIVESTOCK ORDER BUYING COMPANY.

208 N. W. 2d 753.

May 18, 1973—No. 43647.

*Doherty, Rumble & Butler, John J. McGirl, Jr., James F. McGovern,* and *Joseph R. Kernan, Jr.,* for appellant.

*Somsen & Dempsey, Terence M. Dempsey, Heinen & Christian,* and *W. L. Heinen,* for respondent.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Olson, JJ.

O. RUSSELL OLSON, JUSTICE.*

This appeal by the defendant raises the issue of whether the plaintiff, a feedlot operator, established a legally sufficient causal connection between the alleged diseased condition of a shipment of cattle purchased by defendant on behalf of plaintiff and the subsequent losses in plaintiff's entire herd.

The evidence which plaintiff offered on (1) whether the cattle purchased by defendant were diseased when delivered to plaintiff's farm, and (2) whether that diseased condition was the cause of the subsequent losses among plaintiff's other cattle was largely in the form of expert opinion evidence from plaintiff's veterinarian. The veterinarian testified that in his opinion

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

the disease in the herd and the resultant losses were caused by the diseased condition of the animals purchased through defendant and introduced into the herd on or about February 12, 1969. Although plaintiff's herd had been treated for disease in the months preceding the introduction of the cattle purchased through defendant into the herd, the veterinarian expressed the opinion that any disease existent in the plaintiff's herd prior to the new shipment did not cause the subsequent losses. He reasoned that if the same disease had been present in the feedlot earlier, the rest of the herd would have been exposed to the disease, passed through it, and developed an immunity. Thus, they would not have contracted it later as they did. The veterinarian was professionally trained to diagnose diseases clinically and treat the animals. He had himself observed and treated the animals concerned before the new shipment arrived and during the entire period in which the disease ran its course.

Proof of a causal connection must be something more than merely consistent with the plaintiff's theory of the case. Huntley v. Wm. H. Ziegler Co. Inc. 219 Minn. 94, 17 N. W. 2d 290 (1944) ; Alling v. Northwestern Bell Telephone Co. 156 Minn. 60, 194 N. W. 313 (1923). If the facts furnish no sufficient basis for inferring which of several possible causes produced the injury, a defendant who is responsible for only one of such possible causes cannot be held liable. E. H. Renner & Sons, Inc. v. Primus, 295 Minn. 240, 203 N. W. 2d 832 (1973) ; Alling v. Northwestern Bell Telephone Co. *supra.*

Similarly, where expert testimony must be solely relied on to show the causal connection between the alleged cause and a certain subsequent result—either disability or death—medical testimony which does nothing more than show a mere possibility, suspicion, or conjecture that such a causal connection exists, without any foundation for the exclusion of other admittedly possible causes, provides no proper foundation for a finding of a causal connection. Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 59 N. W. 2d 883 (1953).

It is well-settled law that the need for positive expert testimony to establish a causal connection between the defendant's negligent act and the plaintiff's injury depends upon the nature of the question. Where a question involves obscure and abstruse medical factors such that the ordinary layman cannot reasonably possess well-founded knowledge of the matter and could only indulge in speculation in making a finding, there must be expert testimony, based upon an adequate factual foundation that the thing alleged to have caused the result not only might have caused it but in fact did cause it. Stahlberg v. Moe, 283 Minn. 78, 166 N. W. 2d 340 (1969).

The rule against conjectural and speculative opinions is aimed at those opinions not based upon a factual foundation and not at those which are. An opinion of a medical expert witness based upon an adequate factual foundation is not a conjecture but a legitimate inference and as such has evidentiary value in determining disputed questions of fact. Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. 2d 878 (1944). See, also, Filzen v. Nelson, 276 Minn. 146, 149 N. W. 2d 78 (1967).

Mere opinion without careful scientific investigation and examination will not alone sustain a verdict. See, Mageau v. G. N. Ry. Co. 106 Minn. 375, 119 N. W. 200 (1908). However, it is not necessary that medical opinion be capable of demonstration or that an expert speak with confidence excluding all doubt; it is enough that he state his opinion as true in his judgment. Mattfeld v. Nester, 226 Minn. 106, 32 N. W. 2d 291 (1948). An expert may well testify to various possibilities but express as his opinion that the probability rests with one of them. When there is factual foundation to support that opinion, it is for the jury to accept or reject it.

We conclude that there was sufficient factual foundation for the opinion of plaintiff's expert that the diseased condition of the cattle obtained through defendant was the cause of the injury to plaintiff. Plaintiff's expert had observed and treated plaintiff's herd both before and after the introduction of defend-

ant's cattle into the herd. When asked if it were not possible that the herd had the disease before the introduction of defendant's shipment, the expert reasoned that the cattle would have passed through the disease and developed an immunity by the time that the cattle purchased through defendant were introduced. Thus, they would not have contracted it on the later date. Such testimony is sufficient factual foundation to establish a causal connection between the condition of the cattle purchased through defendant and the injury to plaintiff.[1]

The order of the trial court denying defendant's motion for judgment notwithstanding the verdict or a new trial is affirmed.

Affirmed.

---

[1] It is true that in one particular instance, while under cross-examination, the veterinarian appears to have testified that other suggested causes of the diseased condition and losses in the herd were equally possible. However, that particular question and answer are immediately followed in the transcript by an affirmative answer to the cross-examiner's query to the effect that a suggested alternate cause was merely "a possibility"; this suggests the prior affirmative answer was not unequivocal. In any event, the fair reading of the veterinarian's total testimony supports the construction attributed to it in this decision.