Janice **COHEN**, Respondent,

v.

Robert J. **APPERT**, Appellant.

No. CX–90–1187.

Court of Appeals of Minnesota.

Dec. 11, 1990.

Review Denied Jan. 24, 1991.

Martha L. Neese, Thomas J. Lyons, Lyons Sawicki & Assoc., P.A., St. Paul, for respondent.

Gary J. Haugen, Mallory K. Mullins, Maslon Edelman Borman & Brand, Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., PARKER and LANSING, JJ.

## OPINION

LANSING, Judge.

Janice Cohen brought this fraud, legal malpractice, and breach of fiduciary duty action against Robert J. Appert, an attorney who represented Cohen in the settlement of her claims against A.H. Robins Co.

The trial court denied Appert's motion for summary judgment and we affirm.

### FACTS

Janice Cohen had a Dalkon Shield, an intrauterine contraceptive device manufactured and sold by A.H. Robins Company, inserted by Dr. Arthur Horowitz in February of 1972. While wearing the Dalkon Shield, she experienced pain in walking, physical exertion, and sexual intercourse. The device was removed, approximately five months after it was inserted, while Cohen was in Garberville, California. According to Cohen, the doctor who removed the Dalkon Shield told her that she had an infection and that the Dalkon Shield was the irritant.

Following the removal of the Dalkon Shield, Cohen was treated for pelvic inflammatory disease (PID) by several physicians including Dr. Horowitz. In September 1974, Dr. John Mathers performed a laparoscopy and found that Cohen had extensive scarring in her pelvic area due to PID. On his recommendation, Cohen underwent a hysterectomy.

In January 1976, Cohen met with attorney Robert J. Appert to discuss possible claims against A.H. Robins. He agreed to represent her, and she signed a retainer agreement and a medical records release form.

Appert wrote to three of Cohen's doctors, Dr. Mathers, Dr. MacCafferty and Dr. Horowitz, asking them to give an opinion on whether the Dalkon Shield caused Cohen's injuries. Drs. MacCafferty and Horowitz declined to give an opinion. Dr. Mathers responded that he did not have enough information to give an opinion. Cohen alleges that Dr. Mathers was willing to give an opinion, but Appert failed to provide him with the needed information.

In October 1976, Appert wrote Cohen a letter stating:

The doctor that I indicated to you that I would be discussing this case with has expressed the opinion that we are on pretty shaky ground here and he does not feel inclined to go out on a limb in this particular case.

The identity of the doctor referred to in this letter is disputed by the parties. Cohen claims the letter refers to Dr. Mathers; Appert contends that it refers to Dr. Harry Foreman, a physician who had never treated Cohen, but whose expert opinion Appert sought.

In the same letter, Appert stated that Aetna, A.H. Robins' insurer, had offered $16,000 to settle Cohen's claims. Appert advised that, "due to the lack of concrete probative medical evidence in your case, this is probably a reasonable figure."

In November, Cohen and Appert met to discuss the settlement offer. According to Cohen, Appert told her that he could not locate her California records, although he had those records in his file at the time. He also told her that Aetna had lowered its settlement offer from $16,000 to $14,000, and he advised her to accept the $14,000 offer. However, Cohen contends that Appert had already accepted the $14,000 offer and received a settlement check for that amount before he told her the settlement figure had been lowered. After Cohen executed the settlement and release forms on December 1, 1976, she had no further contact with Appert or his law firm.

Cohen claims that she first learned in 1986 that Appert had been disciplined for professional misconduct, and in 1989, she discovered Appert had a close, personal friendship with the Aetna claims adjuster who authorized the settlement figure for her case. From this relationship, she alleges, Appert and the adjuster developed a scheme to induce Dalkon Shield plaintiffs to settle their cases quickly for an amount within the adjuster's personal settlement authority of $15,000. This scheme allowed Appert to "short-circuit" the adversarial system and obtain quick profits by processing a large volume of claims without undertaking investigation or trial preparation.

In May 1989, Cohen sued Appert, alleging fraud, legal malpractice, and breach of fiduciary duty. Appert moved for summary judgment, arguing that Cohen's claims

have no factual basis and, in any event, are time-barred. The trial court denied summary judgment, finding that there were factual questions relating to the tolling of the limitation period and to Cohen's underlying claims. This court granted Appert's motion for discretionary review.[1]

## ISSUES

1. Is there a genuine issue of material fact on whether Appert defrauded Cohen and when, for purposes of tolling the statute of limitations, Cohen discovered the alleged fraud?

2. Is there a genuine issue of material fact on whether Appert fraudulently concealed the facts underlying Cohen's claims of legal malpractice and breach of fiduciary duty?

## ANALYSIS

### I

In reviewing the trial court's denial of summary judgment on Cohen's fraud claim, we must address two issues: (1) whether there was a genuine issue of fact on the elements of fraud; and (2) whether there was a genuine issue of fact on the tolling of the statute of limitations.

To establish a claim for fraud, Cohen must show that Appert made a misrepresentation of material fact which he either knew was false or asserted without regard to its falsity and upon which he intended Cohen to act. *See Davis v. Re-trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967). Cohen must also establish that she reasonably relied on the representation and acted on it to her detriment. *Id.* She must prove actual damages attributable to the misrepresentation. *Id.*

■ Cohen has presented strong circumstantial evidence to support her fraud claim. In particular, she has raised material fact questions on whether Appert's misstatements were intentional and whether nondisclosure of his relationship with the

**1.** Appert moved to strike portions of Cohen's appellate brief. Cohen acknowledges that the disputed passages were not submitted to the trial court; therefore, they are not accepted as part of the record on appeal. *See* Minn.R.Civ. App.P. 110.01.

adjuster was a material misrepresentation. *See Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976) (nondisclosure may constitute fraud when one party suppresses facts which he has a legal or equitable duty to communicate to the other party and which the other party is entitled to have communicated to her). Genuine issues also exist on whether Appert's alleged misrepresentations induced Cohen to accept the $14,000 settlement offer and whether $14,000 was an unreasonably low settlement figure. The trial court correctly concluded that the evidence was sufficient to withstand summary judgment on the elements of fraud.

■ We are also persuaded that Cohen has produced enough evidence to create a fact question on the tolling of the fraud statute of limitations. Minn.Stat. § 541.05, subd. 1(6) (1989) provides a six-year limitation period

> [f]or relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

The limitation period begins running when the fraud is discovered or, in the exercise of reasonable diligence, should have been discovered. *Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn.1985). The time when fraud reasonably should have been discovered is a question of fact. *Id.* (citing *Murphy v. Country House, Inc.*, 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976)). Cohen has presented evidence that she did not discover the relationship between her attorney and the adjuster until 1989 and that Appert actively concealed the existence of his relationship. This evidence is sufficient to withstand Appert's motion for summary judgment.

## II

■ Although Cohen's breach of fiduciary duty and legal malpractice claims may be subsumed in her fraud claim, we address Appert's argument that the doctrine of fraudulent concealment does not toll the limitations period for these claims. Appert argues that when the attorney-client rela-

tionship ended in December 1976, the statute of limitations began to run; to toll the limitation period, Cohen must show an affirmative act of concealment after that point. We do not agree.

The Minnesota Supreme Court first adopted the doctrine that fraud tolls a limitation period in *Schmucking v. Mayo*, 183 Minn. 37, 235 N.W. 633 (1931). In *Schmucking*, the court explained the purpose of the doctrine of fraudulent concealment:

> Two reasons adequately support the rule: First, one who cannot assert his right because the necessary knowledge is improperly kept from him is not within the mischief the statute [of limitations] was intended to remedy; but is within the spirit of the law that restrains its operation. * * * Secondly, a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so.

*Id.* at 40, 235 N.W. at 634.

The concealment must be fraudulent or intentional and, *in the absence of a fiduciary relationship*, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action. *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 795 (1975) (quoting 51 Am.Jur.2d *Limitation of Actions* § 148) (emphasis added), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). These cases imply that when fraudulent concealment occurs during a fiduciary relationship, the plaintiff need not show affirmative acts of concealment as a prerequisite to tolling the statute of limitations. Because "fiduciary" imports a high degree of trust, such an approach is sound policy.

Tolling the limitation period because fraudulent concealment occurred during a fiduciary relationship would not, as Appert contends, "swallow" the statute of limitations. The doctrine only tolls the limitations period until the concealment is or could have been discovered through reason-

able diligence. *Wild v. Rarig,* 234 N.W.2d at 795. The party claiming fraudulent concealment also has the burden of proving that concealment could not have been discovered sooner by reasonable diligence and was not the result of his own negligence. *Id.* (citing *Duxbury v. Boice,* 70 Minn. 113, 120, 72 N.W. 838, 839 (1897)).

 The doctrine of fraudulent concealment is very similar to the discovery rule that tolls the limitations period for a fraud cause of action. In both cases, reasonable diligence is a question of fact. *See Toombs,* 361 N.W.2d at 809. We agree with the trial court that Cohen has produced enough evidence on the issue of due diligence to withstand Appert's motion for summary judgment.[2]

2. *Distel–Bennett v. Pyle,* No. C5–89–1950, 1990 WL 52599 (Minn.App. May 1, 1990), and *Gardner–Whittaker v. Pyle,* No. C3–89–1283, 1989 WL 145407 (Minn.App. Dec. 5, 1989), do not require

## DECISION

Because there are genuine issues of material fact on whether Appert defrauded Cohen, when Cohen discovered the alleged fraud, and whether Appert fraudulently concealed the facts underlying Cohen's claims of legal malpractice and breach of fiduciary duty, the trial court did not err in denying summary judgment.

Affirmed.

a different result. All cases are fact specific. We are not bound by the affirmance of summary judgment in cases involving the same defendant but different facts.