# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1349

_____

| | | |
|---|---|---|
| Glenn D. Abbotts; Steven Beigel; Alyn Bell; Michael Cetta; Andrew R. Cherna; Richard Cooper; Stewart W. Evey; Timothy J. Hanratty; F. Scott Jackson; Jeffrey Kaufman; Anis Keywood; Gerald Moreland; James T. Reilley; Rick Starr, Sean L. Sullivan; James J. Walsh, | * * * * * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Appellants, | * * | |
| v. | * * | |
| Caldwell Campbell, Esq.; Rowland W. Day, II, Esq.; Day & Campbell, L.L.P., | * * * | |
| Appellees. | * | |

_____

Submitted: November 12, 2008
Filed: December 29, 2008

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Sixteen individual investors (Investors) appeal the district court's[1] grant of summary judgment in favor of Cadwell Campbell, Rowland Day, and Day & Campbell, L.L.P. (collectively, Defendants).  We affirm.

I.

On July 16, 1992, Day sent a "Dear Potential Investor" letter to the Investors, enclosing the Common Stock Purchase Agreement (CSPA) for International Gaming Management (IGM), business documents related to IGM, an Investor Suitability Questionnaire, and the signature page for the CSPA.  The letter explained the documents and the income/net worth requirements for investing in IGM.  The letter specifically noted that the investment was "a high risk investment" and that "each investor could lose the entire amount of his investment."  Each Investor complied with the letter's requirements and purchased a minimum of 20,000 shares of IGM for $1.50 each.

As explained in Day's letter, the shares purchased by the Investors under the CSPA were not registered with the Securities and Exchange Commission (SEC) and would not be freely tradeable until so registered.  Day explained that under SEC Rule 144, the Investors typically would have to hold the shares for two years before attempting to sell the stock, but that he had negotiated with IGM to allow his law firm, Day & Campbell, to immediately register the stock on behalf of the Investors.  This would allow the Investors to sell prior to the expiration of the two-year period.  Day stated that "[t]he registration process could take approximately 180 days to be completed."  The Investors were also permitted to sell their shares prior to registration by complying with the requirements of the CSPA and SEC Regulation S.  Regulation S would likely result in a significantly discounted price and would require the

[1]Judge Joan N. Ericksen, United States District Judge for the District of Minnesota.

potential seller to obtain an opinion of counsel that the sale was exempt from registration requirements.

Day was unable to register the shares as promised. On April 30, 1993, IGM asked its outside counsel, Dorsey & Whitney, to prepare a registration statement. On July 15, 1993, IGM's president wrote to all CSPA investors, advising them that the registration statement had been filed and that IGM expected the stock to become freely tradeable within forty to ninety days. The SEC, however, did not accept IGM's registration statement, following which IGM eventually abandoned its efforts to register the CSPA stock because the two-year holding period under Rule 144 was nearing expiration.

Meanwhile, Day negotiated an agreement with IGM on behalf of the CSPA investors. Pursuant to this agreement, IGM would waive certain provisions of the CSPA, thereby removing some of the impediments to complete a Regulation S sale. Day & Campbell did not advise any of the CSPA investors of this waiver, and although Day claims to have verbally communicated the waiver's existence to two of the Investors, both deny such communication. On the day that the waiver went into effect, July 2, 1993, Day attempted to sell 200,000 CSPA shares. The sale was not completed, however, because Dorsey & Whitney refused to provide the necessary opinion of counsel. The law firm permitted Day to seek the opinion from other counsel, but Day made no effort to do so.

During the time that Dorsey & Whitney attempted to register the shares and Day negotiated the waiver, IGM's share price was at its highest level, trading at approximately $10 per share. By early 1994, however, IGM was in significant financial distress. On July 28, 1994, federal and state authorities executed a search warrant and seized documents from IGM's office pursuant to a criminal investigation of several IGM executives. The following day, share prices for IGM dropped substantially, leading to the suspension of trading of IGM stock. IGM later failed, rendering its stock worthless.

In 2000, the government returned all of IGM's seized documents to Mark Kallenbach,[2] who was involved in litigation against IGM executives. While reviewing the documents in connection with that litigation, Kallenbach discovered the waiver. Kallenbach sued Defendants based on the undisclosed waiver on behalf of himself and his wife. His case was settled in 2003.

Eleven years after the failure of IGM and after settling his own suit against Defendants, Mark Kallenbach wrote to the Investors about potential claims that they may have against Campbell and Day based on the undisclosed waiver. Nineteen CSPA investors responded to Kallenbach's letter and in March 2006 filed suit in Minnesota state court against Campbell and Day and their law firm for breach of fiduciary duty, negligent omission, attorney malpractice, and front running. Defendants removed the case to federal court on the basis of diversity jurisdiction. Two Investors dismissed their claims after acknowledging that they had signed a release in favor of Day & Campbell in the settlement of a related case, and one Investor dropped out of the case. The remaining sixteen Investors filed cross-motions for summary judgment.

The district court denied the Investors' motion for summary judgment and granted Defendants' motion, holding that the statute of limitations on the Investors' claims had expired and equitable tolling was not warranted as a matter of law. The court also concluded that the Investors had not presented sufficient evidence that Defendants' failure to inform them of the waiver was a proximate cause of their investment losses. It is from this judgment that the Investors now appeal.

---

[2]Mark Kallenbach is the Investors' counsel and was an officer and member of the board of directors of IGM until 1992. After IGM failed in 1994, Kallenbach was appointed to IGM's board and attempted to salvage parts of IGM's business.

## II.

The Investors concede that the six-year statute of limitations under Minnesota Statute § 541.05 has expired. They argue, however, that the period should be tolled because Defendants fraudulently concealed the waiver. Additionally, they argue that there was sufficient evidence to survive summary judgment that the concealment was the proximate cause of their losses.

We review the district court's grant of summary judgment <u>de novo</u>. <u>Barry v. Barry</u>, 78 F.3d 375, 379 (8th Cir. 1996). Summary judgment is appropriate if the evidence on file "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of making this showing. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The party opposing the motion "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). Although the evidence must be viewed in the light most favorable to the nonmovant, <u>id.</u> at 255, mere speculation is not enough to avoid summary judgment. <u>Gregory v. Rogers</u>, 974 F.2d 1006, 1010 (8th Cir. 1992).

## A.

The Investors have not shown that they exercised reasonable diligence warranting equitable tolling of the statute of limitations period. Minnesota does not apply a discovery rule to any of the Investor's claims, but rather applies "the damage rule of accrual, under which the cause of action accrues and the statute of limitations begins to run when some damage has occurred as a result of the alleged malpractice." <u>Antone v. Mirviss</u>, 720 N.W.2d 331, 335-36 (Minn. 2006) (citing <u>Herrmann v. McMenomy & Severson</u>, 590 N.W.2d 641, 643 (Minn. 1999)) (internal quotations omitted). Because the Investors suffered their financial loss in July 1994, the statute of limitations began to run at this time.

Minnesota does, however, apply the discovery rule to allegations of fraud. Barry, 78 F.3d at 379-80. For fraud claims, "the six year limitations period begins to run when a plaintiff knew or should have known of the fraud." Id. In such cases, "the plaintiff bears the burden of proving that she could not, through reasonable diligence, have discovered the facts constituting the fraud until within six years of the commencement of the action." Id. at 380 (citing Blegen v. Monarch Life Ins. Co., 365 N.W.2d 356, 357 (Minn. Ct. App. 1985). Further, fraudulent concealment of information material to a non-fraud claim will toll a limitations period. Cohen v. Appert, 463 N.W.2d 787, 790 (Minn. Ct. App. 1990). Likewise, the doctrine of fraudulent concealment "only tolls the limitations period until the concealment is or could have been discovered through reasonable diligence." Id. at 790-91 (citing Wild v. Rarig, 234 N.W.2d 775, 795 (Minn. 1975)). The party relying on the doctrine must show that its own negligence did not contribute to the delay in discovery. Cohen, 463 N.W.2d at 791.

Following IGM's collapse in July 1994, the Investors made no effort to obtain the documents seized by the government to investigate the reason for IGM's failure. The Investors simply state that they could not have discovered the waiver because it was in government custody. The record shows, however, that access was granted to Daniel T. Zacharias after he explained that he hoped to rehabilitate IGM. Although Zacharias's access was limited because the government was preparing its case, there is no indication that the government would have denied access to the Investors or that it would not have provided the documents upon completion of its case. The Investors knew that Defendants failed to register their shares as promised and that this prevented them from selling their shares for a profit. They also knew that something was drastically wrong when the FBI raided IGM. Yet, the Investors sought no recourse from Defendants. Following the complete loss of their investment in IGM, the Investors have largely lost or discarded their documents relating to their investment and have written off the losses they incurred.

As the district court noted, it appears that the Investors gave no thought to IGM until an attorney's solicitation letter touting a previous success arrived eleven years after the loss. The record reflects indifference and opportunism rather than reasonable diligence. "Statutes of limitation serve a general purpose of repose, the interest of both the defendant and society in freedom from stale claims." Bartlett v. Miller & Schroeder Muns., Inc., 355 N.W.2d 435, 439 (Minn. App. 1984). The interests of justice do not require the tolling of the limitations period in this instance. See id.

B.

Additionally, the Investors "have failed to present specific facts giving rise to a genuine issue for trial as to the causal connection" between their losses and the nondisclosure of the waiver. Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995). Although proximate cause is generally a fact question for the jury, "where reasonable minds can arrive at only one conclusion, proximate cause is a question of law." Lubbers, 539 N.W.2d at 402 (quoting Warnick v. Moss & Barnett, 490 N.W.2d 108, 113 (Minn. 1993)). The Investors' proximate cause argument rests on the bald assertion that they would have sold their shares if they had known of the waiver. That one can look back with the knowledge of fluctuating stock prices and the impending failure of the company and say that he would have sold at a particular time is simply too self-serving and speculative to form the foundation of a causal connection. The record, including the Investor's expert testimony, does "nothing more than show a mere possibility, suspicion, or conjecture that such a causal connection exists, without any foundation for the exclusion of other admittedly possible causes," and thus "provides no proper foundation for a finding of a causal connection." Bernloehr v. Central Livestock Order Buying Co., 208 N.W.2d 753, 755 (Minn. 1973).

The Investors' claims do not merit equitable tolling and the Investors have failed to present sufficient evidence of causation. Accordingly, the district court's judgment is affirmed.

_____