*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1514**

Cheryl Kaufenberg,
Appellant,

vs.

The Winkley Company
d/b/a Winkley Orthotics & Prosthetics,
Respondent.

**Filed June 8, 2015
Affirmed
Stauber, Judge**

Hennepin County District Court
File No. 27CV1319733

John A. Fabian, David H. Redden, Fabian May & Anderson, P.L.L.P., Minneapolis, Minnesota (for appellant)

D. Sherwood McKinnis, Lindberg & McKinnis, P.A., Cambridge, Minnesota (for respondent)

Considered and decided by Stauber, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

On appeal from the summary-judgment dismissal of her reprisal claim based on alleged sexual harassment in violation of the Minnesota Human Rights Act (MHRA), appellant argues that the district court (1) abused its discretion by denying her motion to

amend her complaint to add a claim of sexual harassment/hostile work environment based on information learned in discovery; (2) erred by granting respondent's motion for summary judgment on the basis that her claim was too speculative; and (3) abused its discretion by denying her motion to compel the production of identities of potential witnesses. We affirm.

**FACTS**

Respondent Winkley Company is an orthotics and prosthetics company with several clinical locations in Minnesota and Western Wisconsin. Gregory Gruman is respondent's president and sole owner. In 2007, Gruman partially retired and no longer took an active role in the day-to-day operations of the company. Instead, Gruman delegated his authority to Terrance Woodman, who signed a ten-year contract to manage the company in 2007.

Appellant Cheryl Kaufenberg began working for respondent in March 2000. In 2002, appellant was assigned to be an administrative assistant for Woodman, who would later become respondent's general manager. According to appellant, Woodman began to sexually harass her shortly after she became his assistant, and she claims that the harassment continued "well into 2013." Appellant, however, did not formally report the alleged harassment until 2013.

In May 2012, respondent hired Nanette Cedarblade as office manager. Cedarblade was responsible for supervising the administrative assistants, including appellant. Cedarblade was also responsible for hiring and firing employees.

2

According to appellant, Cedarblade consistently accused her of having emotional outbursts and "often" told her that she "needed to change [herself] as a person" and have "a better attitude." One of these alleged outbursts occurred on December 7, 2012. On that day, Cedarblade counseled appellant for having an outburst in the office and issued a warning with respect to her behavior.

On June 26, 2013, Cedarblade overheard appellant loudly complaining to a co-worker about how she "felt disrespected" at work. When Cedarblade confronted appellant about the outburst, appellant told Cedarblade that "you are disrespecting me as a person," and "Woodman disrespects me as a person." Appellant received a two-day suspension with pay for the outburst and was told that the purpose of the suspension was to allow her to think about her behavior and to determine whether she wanted to remain employed with respondent.

When appellant returned to work, she apologized for her behavior, and Cedarblade indicated that if appellant had another outburst she would be terminated. But a few days later, Cedarblade reprimanded appellant for using an e-cigarette at her workstation. Appellant denied that she used the e-cigarette inside the office and instead claimed that she just showed the e-cigarette to a patient. A week later, on July 10, 2013, Cedarblade again confronted appellant, this time about a patient who had complained about her poor telephone demeanor.

Appellant was involved in yet another alleged outburst on July 29, 2013, when it was alleged that she "slammed down [her] phone" after she perceived that a co-worker, Kate Braun, remarked negatively about her. Appellant denied that her conduct

3

constituted an outburst, but she admitted being upset with Braun. Later that day, appellant had a conversation with another administrative assistant, Sarah Benson, in which appellant expressed her displeasure with the fact that Benson, rather than appellant, was training a new employee. Although appellant claimed that the conversation was cordial, Benson reported to Cedarblade that appellant accused her of trying to steal her job.

Appellant was reprimanded for her behavior and placed on a 120-day probationary period beginning August 1, 2013. She was also given, and signed, a document entitled "Final[] Warning," which listed several workplace expectations and stated that a "[f]ailure to follow these expectations will result in immediate termination." These expectations included "zero tolerance" for "emotional outburst[s] in the office or on company grounds," and "no negative discussion about the company, management, or other staff members." Finally, the warning instructed appellant to "share in the daily pulling of the appointment files."

On August 26, 2013, appellant, through her attorney, sent a letter to respondent accusing Woodman of sexually harassing appellant during the course of her employment, with the most recent event occurring in June 2013. The letter cited several incidents of harassment and claimed that the "severe and pervasive sexual harassment that [appellant] has been subjected to has interfered with the terms and conditions of her employment and made her daily experience at [respondent] both hostile and abusive." Later that day, appellant's attorney sent a second letter to respondent proposing her voluntary departure in return for severance pay.

Following the receipt of appellant's letters, Woodman was placed on leave beginning August 27, 2013, while respondent investigated the allegations. Respondent's counsel subsequently responded to appellant's allegations of sexual harassment by letter dated August 30, 2013, which stated that respondent's investigation of the matter revealed that the allegations were unsubstantiated and could "most generously be described as manufactured." The letter also stated that any claim of sexual harassment by appellant was protected by the affirmative defense found in the *Faragher-Ellerth* line of cases.[1] The letter further provided that appellant has engaged in numerous "negative behavioral outburst[s]" for which appellant has received multiple warnings and that, based upon the investigation, respondent "has ample authority to unceremoniously terminate [appellant's] employment." But the letter stated that respondent would consider a settlement "in exchange for [appellant's] immediate resignation, full release of all claims, and confidentiality."

Appellant took vacation from August 30, 2013 through September 9, 2013. When she returned on September 10, an incident occurred between appellant and Benson. Benson then informed Cedarblade that appellant had another emotional outburst in front of two patients who were waiting in the lobby, in which appellant yelled at her and exclaimed that "nobody tells her anything" and that she "never knows anything that's

---

[1] The *Faragher/Ellerth* defense set forth in *Faragher v. Boca Raton*, 524 U.S. 775, 807-08, 118 S. Ct. 2275, 2293 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998), was adopted by the Minnesota Supreme Court in *Frieler v. Carlson Marketing Grp., Inc.*, 751 N.W.2d 558, 568 (Minn. 2008), and is available to employers as an affirmative defense to claims by employees involving hostile work environment harassment by the employee's supervisors or superiors. *Schmitz v. U.S. Steel Corp.*, 852 N.W.2d 669, 671 n.1 (Minn. 2014).

going on at Winkley Company." Cedarblade then asked Benson if she and appellant had set up a schedule to pull files, and Benson replied "no." Appellant admits that she never pulled any files after receiving this written expectation on August 1, 2013, but she claims that she discussed the matter with Benson, who indicated that it was "not that big of a deal" and questioned why she would have to pull files. Appellant also disputes Benson's claim that she had another outburst.

On September 12, 2013, respondent dismissed appellant from her employment. Appellant subsequently brought this action against respondent alleging reprisal in violation of the MHRA. Respondent moved to strike from appellant's complaint excerpts of letters sent by respondent's counsel dated August 30, 2013, and September 9, 2013, because they referenced statements made in the course of settlement negotiations that are inadmissible under Minn. R. Evid. 408. The district court granted respondent's motion, concluding that, under rule 408, the challenged excerpts could not be used to "prove liability for or invalidity of [appellant's] claim" because the excerpts were based on settlement communications. The district court also directed appellant to amend her complaint consistent with the order.

After appellant amended her complaint in compliance with the district court's order, appellant served respondent with a second set of interrogatories and requests for production of documents on March 19, 2014. Among other things, appellant sought the identity of any patients in the reception area on September 10, 2013. Respondent objected to the release of this information, claiming that the information was irrelevant

6

and protected by the physician-patient privilege. Consequently, on June 23, 2014, appellant move to compel respondent's responses to the requests.

In the meantime, on April 16, 2014, appellant again moved to amend her complaint to add claims of sexual harassment in violation of the MHRA and Title VII of the Civil Rights Act of 1964. In support of her motion, appellant claimed that she did not initially bring a hostile-environment sexual-harassment claim because respondent's counsel represented that any sexual-harassment claim would be defeated by the *Faragher/Ellerth* affirmative defense. Appellant claimed that, upon deposing Gruman, she learned for the first time that he was no longer running the company and that Woodman had been delegated that responsibility. Appellant asserted that based upon the newly discovered information that Woodman ran the entire company, the *Faragher/Ellerth* defense was unavailable to respondent because it does not apply when the supervisor is the employer's proxy or alter ego. Respondent opposed the motion to amend as untimely and prejudicial.

On the same day that appellant moved to amend her amended complaint, respondent filed a motion for summary judgment. The district court granted respondent's motion for summary judgment, concluding that "no reasonable jury could conclude that [appellant's] termination was in reprisal for her attorney's report of alleged sexual harassment." The district court also determined that "the idea that [appellant] was unaware of Woodman's status at [the company] until March 18, 2014 is ludicrous" in light of the fact that appellant worked with Woodman since 2000, and served as his administrative assistant before and after he became general manger. In addition, the

7

district court determined that respondent would be prejudiced if appellant were allowed to amend her complaint because respondent had already filed a motion for summary judgment on the reprisal claim, and granting of the motion would require more depositions and would delay scheduling. Thus, the district court denied appellant's motion to amend. Finally, the district court denied appellant's motion to compel, concluding that the information appellant sought was irrelevant. This appeal followed.

## D E C I S I O N

### I.      Motion to amend

Appellant challenges the district court's decision denying her motion to amend her amended complaint to add a claim for sexual harassment/hostile work environment. After a responsive pleading is served, "a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Minn. R. Civ. P. 15.01. But leave should not be given if doing so "would result in prejudice to the other party." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "The [district] court has wide discretion to grant or deny an amendment, and its action will not be reversed absent a clear abuse of discretion." *Id.*

The *Faragher/Ellerth* affirmative defense is satisfied by an employer who proves that (1) it exercised reasonable care to prevent and correct workplace harassment and (2) the victim-employee unreasonably failed to take advantage of employer-established preventive and corrective mechanisms. *Schmitz*, 852 NW.2d at 671 n.1 (citing *Faragher*, 524 U.S. at 807, 118 S. Ct. 2293; *Ellerth*, 524 U.S. at 765, 118 S. Ct. at 2270). But the *Faragher/Ellerth* affirmative defense is unavailable when the harrassing supervisor is the

8

employer's proxy or alter ego. *Faragher*, 524 U.S. at 789-90, 118 S. Ct. 2284; *Ellerth*, 524 U.S. at 758, 118 S. Ct. at 2267; *see Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 383-84 (5th Cir. 2003) (holding that the *Faragher/Ellerth* defense is unavailable "when the harassing supervisor is . . . 'indisputably within that class of an employer organization's officials who may be treated as the organization's proxy'" (quoting *Faragher*, 524 U.S. at 789, 118 S. Ct. at 2275) (emphasis omitted)).

Appellant argues that the district court abused its discretion by denying her motion to amend because as soon as she learned of Woodman's authority at the company, making the *Faragher/Ellerth* defense inapplicable to respondent, she "acted diligently to amend her complaint." We disagree. A party seeking to amend a pleading must move with reasonable diligence, especially where an amendment would inject a new issue that may necessitate additional evidence from the adverse party. *Willmar Gas Co. v. Duininck*, 239 Minn. 173, 173, 58 N.W.2d 197, 917 (1953). A district court may deny a proposed amendment if the moving party fails to show good cause for failing to include the claim in the original complaint. *Hempel v. Creek House Trust*, 743 N.W.2d 305, 313 (Minn. App. 2007).

Here, the record reflects that appellant worked with Woodman in the same office from 2000 to 2013, she was present at that office when Gruman retired and Woodman moved into Gruman's office, and she served as Woodman's administrative assistant both before and after he became general manager. Thus, the district court's determination that it is "ludicrous" that appellant was unaware of Woodman's employment status with respondent until March 14, 2014, is fully supported by the record. Moreover, while

9

respondent may have an affirmative defense, this does not excuse appellant from timely asserting her claim. And finally, the record supports the district court's determination that respondent would be prejudiced if appellant were allowed to amend her complaint. At the time appellant filed her motion to amend, the parties had deposed appellant and five of respondent's employees. All of these individuals, including appellant, would likely need to be re-deposed. Therefore, we conclude that the district court did not abuse its discretion by denying appellant's motion to amend the amended complaint.

## II.    Summary judgment

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Star Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). We view the evidence in the light most favorable to the nonmoving party. *Fabio*, 504 N.W.2d at 761. In construing the MHRA, this court applies both Minnesota caselaw and "law developed in federal cases arising under Title VII of the 1964 Civil Rights Act." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

The MHRA prohibits reprisal against an individual for taking action protected by the act. Minn. Stat. § 363A.15 (2014). "A reprisal includes . . . any form of intimidation, retaliation, or harassment." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010) (emphases omitted).

A reprisal claim is analyzed under the *McDonnell Douglas* burden-shifting test. *Fletcher*, 589 N.W.2d at 101. The prima facie case for reprisal requires the plaintiff to establish "(1) statutorily-protected conduct by the employee; (2) adverse employment

10

action by the employer; and (3) a causal connection between the two." *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn. 1983). If the employee establishes a prima facie reprisal case, the burden then shifts to the employer to show legitimate, nondiscriminatory reasons for its actions. *Fletcher*, 589 N.W.2d at 102. If the employer meets this burden, the burden shifts back to the employee to demonstrate that the employer's reasons were actually a pretext for discrimination. *Id.*

The district court held that appellant satisfied the first two elements of her prima facie case of reprisal. But, in concluding that appellant had satisfied the second element, the district court rejected appellant's claim that the August 30, 2013 letter constitutes adverse employment action taken against her because (1) under the district court's previous order filed on December 20, 2013, the letter was inadmissible to prove liability for her claim; and (2) "the letter does not threaten termination; it merely notes that there is ample pre-existing authority to support termination." The district court then appears to conclude that appellant was unable to satisfy her prima facie case because she failed to establish that her sexual harassment claim was causally related to her termination. The district court further concluded that even if appellant could establish a prima facie case, respondent has satisfied its burden to produce a nondiscriminatory reason for the discharge by producing evidence of the "problems with [appellant's] behavior since late 2012." Finally, the district court concluded that appellant "has not shown that [respondent's] nondiscriminatory reason for her termination is merely a pretext."

11

### A. Prima facie case

The parties agree that appellant "engaged in protected conduct when she alleged in her August 26, 2013 letter that Woodman had sexually harassed her," and that respondent "took an adverse action against [appellant] when it terminated" her employment. But appellant argues that the district court erred by concluding that respondent's August 30, 2013 letter was neither admissible for proving, nor evidence of, an adverse employment action against appellant. She argues further that the district court erred by concluding that appellant failed to establish a prima facie case of sexual harassment because she did not show a causal connection between her protected conduct and her termination from employment.

#### 1. August 30, 2013 letter

Respondent initially contends that we should not consider appellant's arguments regarding the August 30, 2013 letter because appellant "failed to properly notice her appeal of the order to strike" the letter. But the order granting respondent's motion to strike did not strike appellant's cause of action, only the references to the August 30, 2013 letter. Thus, the order striking part of the complaint was not appealable. *See* Minn. R. Civ. App. P. 103.03; *Matesic v. Maras*, 177 Minn. 240, 241, 225 N.W. 84, 84 (1929) (holding that an order denying a motion to strike out portions of the complaint was not an appealable order). Therefore, the issue is reviewable.

Respondent also argues that the district court properly concluded that references to the August 30, 2013 letter were protected settlement communication and, therefore, inadmissible under Minn. R. Evid. 408. Generally, evidentiary rulings are reviewed for

an abuse of discretion. *Braith v. Fischer*, 632 N.W.2d 716, 721 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001).

Rule 408 prohibits admission of evidence of conduct or statements made in compromise negotiations to prove liability for, invalidity of, or value of a claim. Minn. R. Evid. 408; *see C.J. Duffey Paper Co. v. Reger*, 588 N.W.2d 519, 524 (Minn. App. 1999) (stating that rule 408 prohibits the admission of evidence when the evidence pertains to a compromise on "a claim which was disputed as to either validity or amount"), *review denied* (Minn. Apr. 28, 1999). Exclusion of this evidence is not required when offered "for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.*

Appellant contends that the "disputed claim at the time the August 30, 2013 letter was written was [her] claim of sexual harassment[;] [n]o reprisal claim existed at the time the . . . letter was sent." Thus, appellant argues that the letter was admissible because she was "seeking to use the August 30, 2013 letter for a purpose other than proving the validity of the claim in dispute at the time of the August 30 letter."

We disagree. Although appellant's reprisal claim had not arisen at the time of the August 30 letter, her alleged sexual harassment/hostile work environment claim was at issue, and that claim arose from the same general set of facts and circumstances as the reprisal claim. *See T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC*, 773 N.W.2d 783, 787 (Minn. 2009) (stating that "[t]his court has given 'claim' and 'cause of action' the same meanings: a group of operative facts giving rise to one or more bases for suing, or

13

the legal theory of a lawsuit" (quotation omitted)). A review of the letters at issue demonstrates that appellant sent two letters to respondent laying out a basis for a sexual harassment/hostile work environment claim, stating that appellant has "authorized [counsel] to commence litigation on her behalf," and proposing a settlement sum "in exchange" for "a release" of appellant's claims. Respondent's August 30 letter responded to the allegations and *disputed* that appellant had a viable cause of action. The letter also stated that respondent had a valid basis to terminate appellant's behavior based on her performance, but stated that it would consider a payment of a much smaller sum "in exchange for [appellant's] immediate resignation, full release of all claims, and confidentiality." These letters are clearly settlement discussions as they indicate that there was a dispute regarding the validity of appellant's sexual harassment/hostile work environment claim, as well as the facts and circumstances that could give rise to any other bases for suing. *See Schifsky*, 773 N.W.2d at 787. In fact, the letters were specifically labeled "confidential settlement communication," and the parties agreed at oral argument that the letters were intended to posture for their clients. *See Reger*, 588 N.W.2d at 525 (recognizing facts that would weigh in favor of excluding a letter under rule 408). Therefore, the district court did not err by concluding that the letter was inadmissible under Minn. R. Evid. 408.

### 2. Causal connection

Appellant also argues that the district court erred by concluding that she failed to establish a causal connection between her protected conduct and her discharge. A causal connection between protected activity and adverse employment action taken by the

14

employer "may be demonstrated indirectly by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time." *Hubbard*, 330 N.W.2d at 445. "Proof of a casual connection must be something more than merely consistent with the plaintiff's theory of the case." *Bernloehr v. Cent. Livestock Order Buying Co.*, 296 Minn. 222, 224, 208 N.W.2d 753, 754 (1973). When timing is suggested as proof of causation, the time between an employee's complaint and the employer's action must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001).

In *Hubbard*, the supreme court concluded that a causal connection was established when the plaintiff was terminated two days after serving a complaint alleging retaliation under the MHRA. 330 N.W.2d at 445. And in *Tretter v. Liquipak Intern., Inc.*, this court found that an inference was established under the MHRA when employee was demoted three months after complaining about her manager and was terminated six months later. 356 N.W.2d 713, 715 (Minn. App. 1984).

Appellant argues that "timing alone would provide sufficient evidence in this case to support a causal connection under a simple application of *Hubbard*." We agree. The record reflects that appellant formally complained of the sexual harassment on August 26, 2013, and was fired just over two weeks later. And appellant actually worked only seven of those days because she was on vacation for several days after formally complaining of the harassment. Under *Hubbard*, the timing of appellant's discharge creates an issue of material fact on whether a causal connection exists between

15

appellant's protected conduct and her discharge. *See* 330 N.W.2d at 445; *see also Tretter*, 356 N.W.2d at 715. Appellant is able to establish a prima facie case of reprisal.

## B. Nondiscriminatory reasons for discharge

Because appellant has established a prima facie case of reprisal, the burden shifts to respondent to show that it terminated appellant for a legitimate, nondiscriminatory reason. *See Hubbard*, 330 N.W.2d at 445. The record reflects that appellant was reprimanded several times beginning in late 2012, and received a final warning shortly before she complained of sexual harassment. The record also reflects that, after complaining of the sexual harassment, appellant was fired when she violated the terms of her final warning. Thus, respondent articulated a legitimate, nondiscriminatory reason for the discharge.

## C. Pretext

If the employer succeeds in carrying its burden of production, the third step of the *McDonnell Douglas* analysis requires the plaintiff to show that the reason or justification stated by the employer is actually a pretext for discrimination. *Fletcher*, 589 N.W.2d at 102. The plaintiff has the burden of persuading the court by a preponderance of the evidence that the employer intentionally discriminated against her. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986). Although temporal proximity may be sufficient to satisfy the causal-connection element, it is not sufficient to prove pretext. *Hubbard*, 330 N.W.2d at 445-46. Pretext may be shown "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by

16

showing that the employer's proffered explanation is unworthy of credence." *Sigurdson*, 386 N.W.2d at 720 (quotation omitted).

Appellant argues that she "has ample evidence that her discharge was motivated at least in part by her protected conduct." To support her claim, appellant argues that it is reasonable to infer that Cedarblade, Hubers, and Gruman perceived her complaint as an attack on the company, felt that appellant could not stay with the company after her report about Woodman, and wanted Woodman back from leave to run the company but thought that this could not happen unless appellant was discharged. Appellant claims that it is reasonable to infer that respondent then attempted to intimidate her into voluntarily resigning on respondent's terms, and when that failed, it "grasped at the first pretext that presented itself and terminated her employment."

We disagree. Summary judgment is appropriate when appellant's allegations of discriminatory pretext are merely "conclusory or unsupported by evidence in the record." *Albertson v. FMC Corp.*, 437 N.W.2d 113, 117 (Minn. App. 1989). In other words, appellant's subjective belief, without more, cannot raise a genuine issue of material fact regarding a discriminatory motive for her discharge. *See Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed."). And appellant cannot rely on the inference of retaliation created by the prima facie case to prove pretext. *Hubbard*, 330 N.W.2d at 445-46.

17

Here, appellant simply manufactures a plausible explanation of the events based on her subjective view of the evidence and claims that she has demonstrated pretext because it is reasonable to infer this explanation from the evidence. But appellant fails to support her theory with any evidence and, as the district court determined, it is "too speculative to survive summary judgment." Without more than mere suggestions, appellant is unable to establish that her discharge was motivated by her protected conduct.

Appellant also contends that respondent's proffered explanation for termination is unworthy of credence and that the district court erred by ignoring evidence disputing respondent's position. We disagree. The record reflects a series of escalating conduct by appellant that led to her dismissal. Appellant was first reprimanded for having an emotional outburst in December 2012, long before she filed her complaint in August 2013. Appellant also received a two-day suspension in June 2013, following an outburst, and she admitted that her behavior was unacceptable. Shortly thereafter, appellant was reprimanded for using an e-cigarette at her workstation and having poor telephone demeanor. Appellant then received a final warning and was placed on probation on August 1, 2013, following another outburst. Although appellant may now dispute some of these allegations, they were all made before her report of sexual harassment and, therefore, support a legitimate basis for her termination. *See Jackson v. Della Special School Dist. No. 2*, 86 F.3d 1489, 1495 (8th Cir. 1996) (recognizing that a history of poor performance before a complaint is filed supports a conclusion that the termination is not pretextual).

Finally, appellant's denial that her conduct constituted an "outburst" on September 10, 2013, which prompted her dismissal, is insufficient to establish that respondent's proffered explanation is unworthy of credence. Appellant's alleged conduct is consistent with her previous unacceptable behavior, and respondent's response is consistent with its previous reprimands and final warning. Moreover, despite appellant's claims that she should not be terminated for failing to pull files because she attempted to set up a schedule to pull the files, she admits that she never pulled the files even though she was told to do so over a month earlier. Appellant's conduct was in violation of her final warning and demonstrates that respondent's proffered reason for terminating appellant is worthy of credence. Accordingly, the district court did not err by granting respondent's motion for summary judgment because appellant failed to show that respondent's nondiscriminatory reason for her termination is merely a pretext for discrimination.

## III.    Motion to compel

The proper method for objecting to discovery violations is a motion to compel during pretrial proceedings. *See* Minn. R. Civ. P. 37.01. Under Minn. R. Civ. P. 37.01(b)(2), a party may request an order compelling discovery in the event of incomplete or nonresponsive discovery responses. The district court has wide discretion to issue discovery orders and, absent a clear abuse of that discretion, its discovery orders will not be disturbed. *In re Comm'r of Pub. Safety*, 735 N.W.2d 706, 711 (Minn. 2007).

Appellant argues that the district court abused its discretion by denying her motion to compel information concerning the identity of any patients in the reception area on September 10, 2013, as well as the individual to whom she was speaking when the

19

alleged outburst occurred.  Appellant contends that the information is relevant to the issues of credibility because it will shed light on whether appellant's alleged outburst was consistent with Benson's report.  But, as the district court determined, whether appellant had an emotional outburst "does not affect her admission that she failed to pull files as required by the terms of the Final Warning."  Appellant's admission that she failed to pull the files in violation of the mandate in the final warning demonstrates that respondent's proffered explanation of discharge is worthy of credence.  Thus, the information is irrelevant, and the district court did not abuse its discretion by denying appellant's motion to compel.

**Affirmed.**